UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

Case No.

ADVANCED PAIN MANAGEMENT & SPINE SPECIALISTS,
PARK CENTER FOR PROCEDURES,
ANESTHESIA PARTNERS OF SOUTHWEST FLORIDA

Petitioners,

vs.

UNITED STATES OF AMERICA,

Respondent.

2:18-MC-7-FtM-38CM

_____/

# PETITIONER, ADVANCED PAIN MANAGEMENT & SPINE SPECIALISTS, PARK CENTER FOR PROCEDURES, AND ANESTHESIA PARTNERS OF SOUTHWEST FLORIDA'S PETITION TO SET ASIDE OR MODIFY CIVIL INVESTIGATIVE DEMAND 2017-0030
## AND INCORPORATED MEMORANDUM OF LAW

Petitioners, Advanced Pain Management & Spine Specialists ("**Advanced Pain**"), Park Center for Procedures ("**Park Center**"), and Anesthesia Partners of Southwest Florida ("**Anesthesia Partners**"), through undersigned counsel and pursuant to 31 U.S.C § 3733(j)(2), hereby files this Petition to Set Aside or Modify Civil Investigative Demand 2017-0030 requesting the deposition testimony of Petitioners' compliance legal counsel David Vaughn ("**Mr. Vaughn**") and incorporated Memorandum of Law.

## I.   INTRODUCTION

Pursuant to 31 U.S.C § 3733(j)(2), Petitioners hereby move to set aside or, in the alternative, modify a civil investigative demand seeking the deposition testimony of Petitioner's compliance legal counsel, Mr. Vaughn. On September 30, 2017, Respondent, the United States

1

of America (the "**Government**"), through the U.S. Attorney's Office for the Middle District of Florida (the "**USAO**"), issued Civil Investigative Demand No. 2017-0030 seeking Mr. Vaughn's deposition testimony regarding a limited waiver of attorney-client privilege (the "**Vaughn CID**"). Shortly after the Vaughn CID was served, the Assistant U.S. Attorney (the "**AUSA**") objected to the undersigned's attendance at Mr. Vaughn's deposition, in the undersigned's capacity as legal counsel for Petitioners, the entities that hold the attorney-client privilege. Once that dispute arose, the AUSA effectively abandoned all attempts to depose Mr. Vaughn or enforce the Vaughn CID for over six (6) months.

Now after over six (6) months of inactivity, the AUSA has abruptly shown renewed interest in deposing Mr. Vaughn. Moreover, Mr. Vaughn has already provided oral communications, lengthy written white papers, and copies of his emails providing his opinions to his client on the issue at hand to AUSA Cohen. The AUSA has all the information, *in writing,* about which Mr. Vaughn would testify; thus, there is no reasonable basis to require Mr. Vaughn to testify to the same facts already provided to the AUSA. To the contrary, based on the facts discussed below, we submit that the Government is on a fishing expedition to try to expand Mr. Vaughn's testimony beyond the agreed upon waiver of the attorney-client privilege, which is clearly impermissible and should be disallowed.

Having been made fully aware of Mr. Vaughn's knowledge and positions as to the relevant issues, there is no reason for the Government to now depose Mr. Vaughn to have him state *ad nauseum* what he has already stated on multiple occasions. We submit the real reason for the proposed Vaughn deposition is an attempt to extract testimony outside of the agreed upon limited waiver of the attorney-client privilege, which is impermissible. Accordingly, the Vaughn CID should be set aside.

In addition, the Vaughn CID should be set aside as moot. On November 16, 2017, Attorney General Jeffrey Sessions issued a memorandum "Prohibition on Improper Guidance Documents" ("Guidance Policy") prohibiting DOJ components from issuing guidance documents that effectively bind the public without undergoing the notice-and-comment rulemaking process. This Guidance Policy is attached as "*Exhibit A.*" Specifically, in affirmative civil enforcement cases, the Guidance Policy states, "The Department may not use its enforcement authority to effectively convert agency documents into binding rules" and "Department litigators cannot use noncompliance with guidance documents as a basis for proving violations of applicable law." *Id.* If the government is prohibited from using Advisory Opinions to establish intent as mandated by the Attorney General, the purpose of the deposition testimony discussing legal advice pursuant to Advisory Opinion 12-06 is irrelevant and the need for deposition testimony is moot.

Alternatively, to the extent that this Court requires that Mr. Vaughn appear for his deposition, the Vaughn CID should be appropriately modified. Mr. Vaughn is legal compliance counsel for Petitioners, which also are the recipients of CIDs issued by the AUSA. In connection with those CIDs, Mr. Vaughn's clients have formally invoked the advice of counsel defense based upon a limited waiver of the attorney-client privilege. To the extent that the AUSA is now improperly seeking testimony from Mr. Vaughn exceeding the scope of the Petitioner's limited attorney-client privilege waiver, this Court should appropriately limit or modify the scope of the Vaughn CID to preclude the AUSA from soliciting testimony regarding topics and subject matter that are protected by the attorney-client privilege.

## II. BACKGROUND

### A. The Department of Defense Subpoenas, Health and Human Services Subpoenas, and Civil Investigative Demands

On May 18, 2016, the Department of Defense, Defense Criminal Investigative Service, through the Inspector General, served subpoenas *duces tecum* (collectively, the "**DOD Subpoenas**") directed to Advanced Pain, Park Center, and Anesthesia Partners. The DOD Subpoenas sought, *inter alia*, documents from Petitioners relating to policies, procedures, and billing with respect to anesthesia services provided to patients from January 1, 2010, through the date of the DOD Subpoenas. On August 2, 2016, Health and Human Services, through the Inspector General, served subpoenas *duces tecum* on Petitioner's expanding the scope of the subpoenas to all federal healthcare programs.

Petitioner's engaged undersigned counsel in May 2016, after receipt of the subpoenas from the Department of Defense. The government informed undersigned counsel in initial conversations that one area of investigation was the business structure between the three (3) entities which the government believes could be a potential violation of the federal Anti-kickback Statute ("AKS"). The government was informed early in the investigation that Petitioners consulted with their legal compliance counsel, David Vaughn, when creating Anesthesia Partners to ensure compliance with all federal rules and regulations.

On January 10, 2017, the USAO issued Civil Investigative Demand No. 2017-0001 directed to Advanced Pain (the "**First AP CID**"). On November 11, 2017, the USAO issued a second Civil Investigative Demand No. 2017-0048 directed to Advanced Pain (the "**Second AP CID**"). On May 31, 2018, the USAO issued a third Civil Investigative Demand No. 2018-25 ("**Third AP CID**"). The First, Second and Third AP CIDs were issued pursuant to the False Claims Act, 31 U.S.C. §§ 3729-3733 in connection with the USAO's investigation to determine whether there had been violations of 31 U.S.C. § 3729. According to the CIDs, the USAO's investigation was purportedly to determine whether Advanced Pain and other entities submitted or

caused the submission of false claims to federal health care programs, in violation of 42 U.S.C. § 1320c-5(a)(1), by allegedly billing the Government for procedures that were purportedly medically unnecessary, not provided, reimbursed more than once, or provided in violation of the Stark Act and/or federal AKS.

**B.     The Vaughn CID**

In connection with the Government's investigation into Petitioners, the AUSA sought information from Mr. Vaughn relating to Petitioners' anesthesia business model. Whereas it is often the case that defense counsel and his/her client differ on the circumstances of the advice given or the substantive nature of the advice given when the client asserts an advice of counsel defense, such is not the case here. Mr. Vaughn has informed the government numerous times, in teleconferences and in writing, that he does not believe Petitioners' business model violates the AKS, that it can be differentiated from OIG Advisory Opinion 12-06, and that he will testify to this at trial. On September 22, 2018, undersigned and David Vaughn provided the government with a white paper setting forth with specificity the arguments that distinguish Petitioners' business model from OIG Advisory Opinion 12-06.[1] Mr. Vaughn opined in the white paper that Petitioners did not violate the AKS, which was the same opinion he verbally provided to the client and corroborated in email communications to the client that were subsequently provided to the government pursuant to the Vaughn CID. The undersigned and Mr. Vaughn had a teleconference with AUSA Cohen and HHS-OIG to further discuss the submitted white paper. In the telephone conference with the OIG attorney regarding the initial white paper, it appeared that she was not familiar with CRNAs (versus anesthesiologists) being used to provide anesthesia (which is the model used by Petitioners in this matter), and how that impacted the AKS analysis. OIG Opinion

---

[1] Due to the sensitive and confidential nature of this document, it has not been included as an exhibit, however, Petitioners are happy to provide the document *in camera* to the Court for review.

5

12-06 relates to anesthesiologists giving kickbacks to GI surgeons in order to procure anesthesia work. CRNAs (used by Petitioners) are not anesthesiologists. In fact, they are not physicians at all; they are nurses. Nothing in OIG Opinion 12-06 mentions CRNAs. Accordingly, the OIG agreed that the undersigned and Mr. Vaughn would provide a white paper supplement to the Government more fully addressing the CRNA issue, which was provided on November 29, 2016. On February 13, 2017, AUSA Cohen sent an email stating, "HHS-OIG has rejected the analysis contained in the white papers, including the CRNA analysis, and continues to believe that the relationship between Advanced Pain and Anesthesia Partners constitutes a potential violation of the Anti-Kickback Statute." Undersigned counsel requested further analysis in either writing or verbally to understand the nature of the government's denial, however, no further analysis was provided by the government. Mr. Vaughn maintains that his legal advice to his clients and the analysis provided to the Government with undersigned counsel is accurate. These two white papers alone should be all the Government needs to know from Mr. Vaughn. Seeking his deposition to only have him regurgitate what has been put in writing, *twice already*, goes beyond the mere fact-finding purpose of a CID. The only reasonable conclusion for the insistence of Mr. Vaughn's deposition is to try to extract impermissible testimony beyond the agreed upon limited waiver of the attorney-client privilege.

Even though the Government had been advised on several occasions by Mr. Vaughn and the undersigned that Mr. Vaughn would provide the exact same legal advice today to Petitioners and would testify at trial about the legal advice that he provided to Petitioners consistent with his verbal and written submissions to the Government, on September 30, 2017, Mr. Vaughn and his law firm were served with the Vaughn CID, which sought Mr. Vaughn's deposition testimony.[2]

---

[2] Due to the sensitive and confidential nature of this government document, it has not been included as an exhibit, however, Petitioners are happy to provide the document *in camera* to the Court for review.

The Vaughn CID sought Mr. Vaughn's testimony relating to legal advice provided to the APMSS-related entities regarding the creation of Anesthesia Partners of SWFL. On October 3, 2017, the undersigned, acting on behalf of Petitioners, sent written correspondence to the AUSA objecting to the Vaughn CID.[3]

On October 6, 2017, the AUSA sent correspondence to the undersigned responding to the objections to the Vaughn CID.[4] Upon receiving the AUSA's response, the undersigned contacted the AUSA by telephone to advise him that the undersigned would be joining Mr. Vaughn at his deposition, in connection with the undersigned's representation of Petitioners. Undersigned's presence at the CID was essential to the deposition for the following reasons: 1) Petitioners hold the privilege and undersigned counsel represented Petitioners pursuant to this waiver; 2) the waiver of privilege was extremely limited and Mr. Vaughn was not privy to all of the details of the government's investigation; and 3) an inherent conflict is created by forcing Mr. Vaughn to be both a witness and legal counsel for Petitioners during his own deposition. Clearly, Mr. Vaughn could not attempt to answer questions as a witness while analyzing whether or not a privilege exists, or the extent of that privilege, on an issue upon which he did not represent the client. The AUSA responded by stating the undersigned "better not make travel plans." Thereafter, the undersigned and Mr. Vaughn did not hear anything from the AUSA for a period of over six (6) months. By all accounts, it appeared that the AUSA had completely lost all interest in deposing Mr. Vaughn.

---

[3] Due to the sensitive and confidential nature of this document, it has not been included as an exhibit, however, Petitioners are happy to provide the document *in camera* to the Court for review.

[4] Due to the sensitive and confidential nature of this government document, it has not been included as an exhibit, however, Petitioners are happy to provide the document *in camera* to the Court for review.

In May 2018, the AUSA abruptly communicated his renewed interest in deposing Mr. Vaughn pursuant to the Vaughn CID which, by that time, was clearly stale as no action had been taken for several months to either schedule Mr. Vaughn's deposition or enforce the Vaughn CID. Undersigned counsel requested that the government issue a timely CID, however this request was denied.

### C. Advice of Counsel Defense and the APMSS-Related Entities' Limited Waiver of the Attorney-Client Privilege

The conclusion of the white paper submitted to the government on September 22, 2016, stated that "If the United States Attorney's Office decides that *our clients' business model* violates the Anti-Kickback Statute in light of both Advisory Opinion 12-06 and 13-15, then our clients will invoke the advice of counsel defense and we will waive attorney/client privilege *for the limited purpose of advice pertaining to the business model and OIG Advisory Opinion 12-06.*" [emphasis added].[5] This waiver pertained to the limited issue of the company's business model, the subject of the subpoenas and CIDs, as it pertained to OIG Advisory Opinion 12-06.

This limited waiver was reiterated on September 30, 2017, in correspondence to the USAO formally invoking the advice of counsel defense, thereby triggering a limited waiver of the attorney-client privilege. The undersigned's letter states, in relevant part:

> Our client is invoking the advice of counsel defense *for the specific issue of advice provided to our clients about the legality of the anesthesia business model.* The waiver of privilege does **not** pertain to any other issues discussed during settlement negotiations, the current investigation, or any other legal advice...Mr. Vaughn also helped our client with setting up the separate anesthesia business entity."[6]

---

[5] Due to the sensitive nature of the entirety of this document, it has not been included as an exhibit, however, Petitioners are happy to provide the document *in camera* to the Court for review.

[6] Due to the sensitive nature of the entirety of this document, it has not been included as an exhibit, however, Petitioners are happy to provide the document *in camera* to the Court for review.

8

(Emphasis added.)

The undersigned's October 3, 2017, letter to the AUSA objecting to the Vaughn CID specifically explained the reasons why the Vaughn CID seeking Mr. Vaughn's deposition testimony exceeded the scope of the limited waiver. The business model that the government alleges violates the AKS has always been the Anesthesia Partners' business model. The Anesthesia Partners' business model was the subject of the teleconference with HHS-OIG, the white paper submitted to the government, and the white paper supplement submitted to the government. The scope of the waiver is corroborated in multiple communications with the government discussed above, as well as additional communications with the government. In emails dated September 25, 2017, and September 29, 2017, AUSA Cohen confirmed that the waiver of privilege was related to the ownership of Anesthesia Partners. Specifically, the emails state respectively, "In addition, last time we spoke you indicated that Advanced Pain would be waiving its attorney client privilege with respect to the issue of whether Dr. Daitch and Dr. Frey's *ownership of Anesthesia Partners* potentially violates the federal Anti-Kickback Statute" and "I understand from your prior email that Advanced Pain has agreed to waive its attorney client privilege with respect to the issue of whether Dr. Daitch and Dr. Frey's *ownership of Anesthesia Partners* potentially violates the federal Anti-Kickback Statute. [emphasis added] A copy of these emails are attached as **"Exhibit B."**

On October 20, 2017, the undersigned produced additional email communications between Petitioner and David Vaughn, Esq. and formally waived attorney-client privilege regarding the limited issue of Anesthesia Partners' business model. Specifically, the undersigned wrote, "We are producing these documents in support of our client's advice of counsel defense pursuant to the very limited waiver of attorney-client privilege regarding the legality of the Anesthesia Partners

SWFL business model. Pursuant to discussions with our client and David Vaughn, these emails contain advice provided by David Vaughn solely regarding the legality of the anesthesia business model of Anesthesia Partners of SWFL and compliance of that entity's model with Advisory Opinion 12-06." This letter is provided as **Exhibit "C."**

Now, the government is seeking to expand the waiver of privilege to a contractual agreement for anesthesia services between Advanced Pain Management & Spine Specialists and IPS of Fort Myers, LLC, a company that existed prior to the creation of Anesthesia Partners and was dissolved on September 20, 2013. The government cannot now expand the limited waiver of a privilege as the government does not have the authority to assert or waive such privilege to better fit the theory of the government's investigation. Undersigned counsel has never represented ISP nor Advanced Pain's interest in ISP. ISP ceased to exist in 2013, well before undersigned's representation of the client. The business model associated with the ISP contract was never discussed with the government as a potential violation of AKS, or discussed at all, prior to the limited waiver of privilege.[7] It defies logic why the government would impute an attorney-client privilege waiver on an entirely different legal business entity with a different legalstructure. The IPS business model and any other advice provided pursuant AO 12-06 is irrelevant and clearly outside the scope of the waiver, which is limited to the relevant subject matter of the current business model, as agreed to in writing by the government.

### III. ARGUMENT

---

[7] The first time the government ventured into this new line of questioning was during Dr. Daitches' deposition on October 19, 2017, after the client waived attorney-client privilege as to the limited issue of legal advice received to establish the Anesthesia Partners of SWFL business model. Undersigned counsel immediately objected to the question as privileged communications and it was not answered.

10

A.  **Standard**

31 U.S.C § 3733 is the federal statute relating to issuance and enforcement of civil investigative demands. The statute provides for a mechanism for a person who has been served with a civil investigative demand to seek protection from the court by requesting that the civil investigative demand be set aside or modified. 31 U.S.C § 3733(j)(2) states:

> **(2) Petition to modify or set aside demand.--(A)** Any person who has received a civil investigative demand issued under subsection (a) may file, in the district court of the United States for the judicial district within which such person resides, is found, or transacts business, and serve upon the false claims law investigator identified in such demand a petition for an order of the court to modify or set aside such demand. In the case of a petition addressed to an express demand for any product of discovery, a petition to modify or set aside such demand may be brought only in the district court of the United States for the judicial district in which the proceeding in which such discovery was obtained is or was last pending. Any petition under this subparagraph must be filed—
>
> (i) within 20 days after the date of service of the civil investigative demand, or at any time before the return date specified in the demand, whichever date is earlier, or
>
> (ii) within such longer period as may be prescribed in writing by any false claims law investigator identified in the demand.
>
> **(B)** The petition shall specify each ground upon which the petitioner relies in seeking relief under subparagraph (A), and may be based upon any failure of the demand to comply with the provisions of this section or upon any constitutional or other legal right or privilege of such person. During the pendency of the petition in the court, the court may stay, as it deems proper, the running of the time allowed for compliance with the demand, in whole or in part, except that the person filing the petition shall comply with any portions of the demand not sought to be modified or set aside.

As explained below, Petitioners seek to have the Vaughn CID set aside on the basis that the AUSA's request to depose Mr. Vaughn is duplicative of information already provided both verbally and in writing, *at least three times*, including once in the initial white paper, once in the supplemental white paper, and once by providing copies to the AUSA of his emails where he stated

11

his opinion to the client. Alternatively, Petitioners request that the Court appropriately modify the Vaughn CID such that the Government is prohibited from inquiring into areas that are not the subject of Petitioners' limited waiver of privilege and, in fact, are protected by the attorney-client privilege.

**B.  The Vaughn CIDs Should Be Quashed Unless the Government Can Demonstrate a Reasonable Basis to Obtain Information it Does Not Already Have**

Mr. Vaughn has informed the government on numerous occasions, in teleconferences, white papers, and by copies of emails to his client that he does not believe the Petitioners' business model violates the AKS, that it can be differentiated from OIG Advisory Opinion 12-06. At all times material, Mr. Vaughn maintained and continues to maintain that his legal advice and the analysis provided to the government with undersigned counsel is accurate. The defense of the attorney-client privilege precludes a finding under the False Claims Act that the provider acted with the requisite knowledge to submit a false claim. As such, the sole issue is whether the attorney provided advice to the client and the client reasonably relied on that advice. AUSA Cohen has already taken the deposition of Dr. Daitch, who owns the Practice. There is no material, probative value in taking the deposition of Mr. Vaughn other than to establish whether he provided an opinion that Dr. Daitch's actions were not in violation of the AKS. Since Mr. Vaughn has already provided that information to the Government on multiple occasions, there is no legitimate reason to take a deposition to establish what Dr. Daitch and Mr. Vaughn have already provided to the Government.

Mr. Vaughn is a licensed attorney in good standing and should be extended at least some level of professional courtesy inasmuch as his deposition clearly is unnecessary as his knowledge and legal opinions as to the subject matter to which the limited waiver of the attorney-client privilege applies has been fully and exhaustively disclosed to the Government. The Vaughn CID

is unnecessary in light of the multiple disclosures Mr. Vaughn has already provided to the Government in the form of verbal communications, the lengthy white paper and a supplemental white paper, and his emails to the client regarding his opinion on the issue which is the subject matter of the investigation.

A CID is meant to be a preliminary fact-finding tool for the government. However, it is not meant to " . . . be so broad so as to be in the nature of a 'fishing expedition.'" *See Peters v. United States*, 853 F.2d 692, 699 (9th Cir. 1988). Since the Government already has in its possession the facts about which Mr. Vaughn would testify, there is no legally legitimate basis to take Mr. Vaughn's deposition, other than to attempt to extract facts about which the attorney-client privilege has not been waived, which is impermissible.

C.  **The Subject Matter of the CID is Moot**

Moreover, it is remains unclear what the relevance of Advisory Opinion 12-06 is to the investigation. On November 16, 2017, Attorney General Jeffrey Sessions issued a memorandum "Prohibition on Improper Guidance Documents" ("Guidance Policy") prohibiting DOJ components from issuing guidance documents that effectively bind the public without undergoing the notice-and-comment rulemaking process. This Guidance Policy is attached as *"Exhibit A."* Specifically, in affirmative civil enforcement cases, the Guidance Policy states, "The Department may not use its enforcement authority to effectively convert agency documents into binding rules" and "Department litigators cannot use noncompliance with guidance documents as a basis for proving violations of applicable law." *Id.* If the government is prohibited from using Advisory Opinions to establish intent as mandated by the Attorney General, the purpose of the deposition testimony discussing legal advice pursuant to Advisory Opinion 12-06 is moot.

Finally, it is unclear why the government continues to pursue this line of investigation regarding the anesthesia business model. In a press release from the Department of Justice released on Monday, June 4, 2018, the government stated, "In addition, the civil settlement resolves kickback allegations associated with anesthesia services provided by Anesthesia Partners of SWFL, LLC that was owned by Dr. Frey and his partner Dr. Daitch." The Department of Justice press release is attached as "*Exhibit C.*" If the government has resolved the allegations regarding anesthesia services provided by Anesthesia Partners of SWFL as stated, it appears again that the purpose of the deposition testimony is moot.

D. **The Vaughn CIDs Should Be Appropriately Modified to Preclude Inquiry into Areas for Which the Limited Waiver Does Not Apply**

If the Court decides not to set aside the Vaughn CID in its entirety, then the Court should appropriately modify the Vaughn CID and the subject matter of Mr. Vaughn's deposition to the limited attorney-client privilege waiver pertaining to the specific issue of the Anesthesia Partner's business model, the subject of the subpoenas and CIDs, as it pertained to OIG Advisory Opinion 12-06, and as agreed to by the parties in multiple communications. All other topics and other legal entities remain subject to attorney-client privilege. A "civil investigative demand…may not require… the giving of any oral testimony if such…testimony would be protected from disclosure under" "(B) the standards applicable to discovery request under the Federal Rules of Civil Procedure…". 31 USC § 3733(b). Federal Rule of Civil Procedure 45(d)(3)(A)(iii) states "On timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." Therefore, the Court must quash or modify the Vaughn CID, and the subject matter of the requested deposition, since the government intends to seek oral testimony regarding clearly privileged matters.

14

## E. CONCLUSION

The government abandoned the Vaughn CID and, as such, we respectfully request that the Court set the Vaughn CID aside. Moreover, the inquiry that is the subject matter of the CID and subsequent deposition is irrelevant pursuant to the Government's Guidance Policy, therefore making the deposition moot. Petitioner also requests that the Vaughn CID be set aside because it is duplicative, over broad, and designed for no purpose other than to extract information about which the attorney-client privilege has not been waived. To the extent that the Vaughn CID requests nonwaived privileged information, the Vaughn CID should be quashed. Alternatively, to the extent that this Court requires that Mr. Vaughn appear for his deposition, the Vaughn CID should be appropriately modified to the limited waiver of attorney-client privilege as agreed to by the parties in the communications provided.

**FISHER BROYLES LLP**

*Attorneys for Respondent, Advanced Pain Management and Spine Specialists*
2390 Tamiami Trail North, Suite 100
Naples, FL 34103
Telephone: (202) 570-0248
Facsimile: (239) 236-1260

By: /s/ Brian E. Dickerson
**BRIAN E. DICKERSON**
Fla. Bar No. 106615
*brian.dickerson@fisherbroyles.com*


By: /s/ Nicole Hughes Waid
**NICOLE HUGHES WAID**
Fla. Bar No. 121720
*nicole.waid@fisherbroyles.com*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document was served on this 20th day of June, 2018 on **Maria Chapa, Esq.**, United States Attorney and **Kyle S. Cohen, Esq.**, Assistant United States Attorney, 2110 First Street, Suite 3-137, Fort Myers, Florida 33901.

By: /s/ Nicole Hughes Waid
Nicole Hughes Waid, Esq.