THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ADVANCED PAIN MANAGEMENT
AND SPINE SPECIALISTS, PARK
CENTER FOR PROCEDURES,
ANESTHESIA PARTNERS OF
SOUTHWEST FLORIDA,

    Petitioners,

  v.           Case No. 2:18-mc-7-FtM-38CM

UNITED STATES OF AMERICA

    Respondent.
_____/

**UNITED STATES OF AMERICA'S MOTION TO DISMISS ADVANCED
PAIN MANAGEMENT & SPINE SPECIALISTS, PARK CENTER FOR
PROCEDURES, AND ANESTHESIA PARTNERS OF SOUTHWEST FLORIDA'S
<u>PETITION TO SET ASIDE CIVIL INVESTIGATIVE DEMAND 2017-030</u>**

Respondent, the United States of America, files this Motion to Dismiss Advanced Pain Management & Spine Specialists ("Advanced Pain"), Park Center for Procedures ("Park Center"), and Anesthesia Partners of Southwest Florida's ("Anesthesia Partners") Petition to Set Aside Civil Investigated Demand 2017-30 (the "Petition"). As explained below, the Petition should be denied because the court lacks jurisdiction. If, however, the Court determines it has jurisdiction, the Petition should be denied because the conduct being investigated is within the scope of the Attorney General's congressional authority, the demands made are specific and clear, and the information sought is relevant to the United States' investigation.

# I. BACKGROUND

The United States is conducting an ongoing investigation into potential violations of the False Claims Act ("FCA") committed by Advanced Pain; its managing physician, Dr. Jonathan Daitch; and two affiliated entities, Park Center and Anesthesia Partners. Among other things, the United States is investigating whether Dr. Daitch made referrals for anesthesia services to Anesthesia Partners in exchange for remuneration in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b.

### A. Anesthesia Partners

Anesthesia Partners was formed by Dr. Michael Frey and Dr. Jonathan Daitch in 2013 in order to be the exclusive provider of anesthesia services to Advanced Pain and its wholly-owned Ambulatory Surgical Center, Park Center. Advanced Pain and Park Center, both of which are owned by Dr. Daitch and Dr. Frey, were the only source of referrals to Anesthesia Partners, which Drs. Daitch and Frey also owned. Anesthesia Partners contracted with Certified Registered Nurse Anesthetists ("CRNAs") to provide the anesthesia services. These CRNAs were paid a contracted, hourly rate, and Anesthesia Partners would bill Medicare and Tricare directly for the anesthesia services the CRNAs provided.[1] The United States' investigation has focused on whether Dr. Daitch's ownership

---

[1] Prior to the formation of Anesthesia Partners, anesthesia services performed at Park Center were provided by Innovative Pain Solutions of Fort Myers ("IPS"). IPS was a joint venture owned by Dr. Frey, Dr. Daitch, and Dr. Carl Noback. Like Anesthesia Partners, IPS was the sole provider of anesthesia services for Advanced Pain and Park Center. Like Anesthesia Partners, IPS contracted with CRNAs to provide those services. Like Anesthesia Partners, IPS relied exclusively on referrals from doctors at Advanced Pain. Dr. Daitch and Dr. Frey terminated their relationship with IPS based on purported written legal advice that they claim advised them that they needed to employ their CRNAs directly. As noted above, Anesthesia Partners does not employ its CRNAs.

interest in Anesthesia Partners, and the remuneration he received through his ownership interest, induced him to refer patients for anesthesia services to Anesthesia Partners.[2]

### B. Advanced Pain's Advice of Counsel Defense

On September 22, 2016, counsel for Advanced Pain provided the United States with an analysis of the legality of the anesthesia business model (the "White Paper"). In the White Paper, counsel for Advanced Pain stated they were prepared to waive privilege and assert an advice of counsel defense if necessary. After reviewing the White Paper and a supplement later provided by Advanced Pain (the "White Paper Supplement"), the United States informed Advanced Pain that the relationship between Advanced Pain and Anesthesia Partners may constitute a violation of the Anti-Kickback Statute.

Subsequently, on September 29, 2017, Advanced Pain formally invoked the advice of counsel defense "for the specific issue of advice provided to our clients about the legality of the anesthesia business model." Based on this waiver, the then Acting United States Attorney for the Middle District of Florida, pursuant to his powers under 31 U.S.C. § 3733, issued Civil Investigative Demand 2017-30 (the "CID" or "CID 2017-30") to David Vaughn, the attorney whose advice Advanced Pain claims to have relied upon. The CID, which was served on September 29, 2017, contained document requests, a single interrogatory, and a request to depose Mr. Vaughn. In response, Mr. Vaughn produced 11 pages of emails and answered the interrogatory subject to objections.

The 11 pages of emails purportedly contained "legal advice provided to the clients about compliance of the anesthesia business model with federal healthcare laws." *Id.*

---

[2] On May 11, 2018, Dr. Frey, in his individual capacity, entered into a settlement agreement with the United States relating to, among other things, this very issue.

However, the government's review of those emails and an associated privilege log indicated that counsel for Advanced Pain had in fact withheld documents containing legal advice Advanced Pain received regarding the legality of the anesthesia business model. Indeed, in further correspondence, counsel for Advanced Pain began to walk back the scope of its waiver to carve out advice rendered by David Vaughn with regard to the legality of IPS.

Notwithstanding the disagreement over the scope of Advanced Pain's privilege waiver, the United States was prepared to proceed with Mr. Vaughn's deposition. But now, nearly nine months after the CID was served, Advanced Pain is asking the Court to block the CID deposition outright, or, in the alternative, limit the scope of any deposition to preclude the United States from asking questions that Advanced Pain deems beyond the scope of their privilege waiver. For the reasons explained below, the Petition should be denied.

## II. THE COURT LACKS JURISDICTION OVER THE PETITION

Under the doctrine of sovereign immunity, courts lack jurisdiction over suits against the government unless the government has consented to be sued. *Stringer v. United States*, 776 F.2d 274, 275 (11th Cir.) (per curiam); *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). Congress can pass a statute waiving sovereign immunity, however, "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996). Further, any waiver of sovereign immunity "will be strictly construed, in terms of its scope, in favor of the sovereign." *Id.* As such, courts will strictly enforce statutory deadlines

contained in waivers of sovereign immunity and treat the failure to comply with those deadlines as jurisdictional prerequisites. *See Stringer*, 776 F.2d at 276.

Advanced Pain has moved to set aside or modify the CID pursuant to 31 U.S.C. § 3733(j)(2)(A). Section 3733(j)(2)(A)(i) commands that "[a]ny petition filed under this subparagraph *must* be filed . . . within 20 days after the date of service . . . , or at any time before the return date specified in the demand, whichever is earlier."[3] 31 U.S.C. § 3733(j)(2)(A)(i) (emphasis added). The language of the statute is clear. Any party wishing to set aside or modify a CID pursuant to § 3733(j) *must* file its petition before the expiration of the deadlines explicitly included in the statute. *Id.* When a party fails to comply with a statutory deadline of this kind, the court lacks jurisdiction to hear its petition. *See Stringer*, 776 F.2d at 275 (dismissing motion to quash an IRS summons filed after the statutory twenty day period for lack of jurisdiction); *Callahan v. Schultz*, 783 F.2d 1543, 1545 (11th Cir. 1986) (agreeing "in theory" that the "government's consent to suit . . . requires strict compliance with 26 U.S.C. § 7609(b)(2)(A) . . . which provides that a proceeding to quash must be commenced within twenty days").

Here, the CID was served on David Vaughn on September 29, 2017. Advanced Pain chose not to file their challenge to CID 2017-30 until June 20, 2018—over eight months after it was served. Because Advanced Pain failed to comply with the timing requirement found in 31 U.S.C. § 3733(j)(2)(A)(i), the court lacks jurisdiction to entertain the Petition.

---

[3] Section 3733(j)(2)(A)(ii) allows a petition to be filed within a longer period if it is "prescribed in writing by any false claims investigator identified" in a CID. No longer period has been prescribed here.

## III. THE CID SHOULD NOT BE QUASHED

"The False Claims Act is the primary law on which the federal government relies to recover losses caused by fraud." *McNutt ex rel. U.S. v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005). Under the FCA, the Attorney General is empowered to issue civil investigative demands ("CIDs") in order to obtain information to determine whether the FCA has been violated. *See Vermont Agcy. of Nat'l Resources v. United States*, 529 U.S. 765, 789 (2000) (Stevens, J., *concurring*). Although the power to issue CIDs is not plenary, Congress has imbued the Attorney General with broad investigative authority. To legally issue a CID, the Attorney General (or his designee) only needs to have a "reason to believe that any person may be in possession, custody, or control of any documentary material or information relevant to a false claims law investigation." 31 U.S.C. § 3733(a)(1).

Persons who are served with a CID may file a petition in federal district court seeking an order to modify or set aside the CID. 31 U.S.C. § 3733(j)(2)-(3). When such petitions are timely filed, courts review CIDs as administrative subpoenas. *See United States v. Markwood*, 48 F.3d 969, 975-76 (6th Cir. 1995) (finding FCA CIDs are administrative subpoenas); *United States v. Witmer*, 835 F. Supp. 208, 212 (M.D. Pa. 1993) (treating FCA CID as an administrative subpoena); *In re Civil Investigative Demand 5-439*, No. 5:16-mc-3, 2016 WL 4275853 (W.D. Va. Aug. 12, 2016) ("A CID is an administrative subpoena"). As such, the role of a district court in reviewing a CID is "sharply limited." *E.E.O.C. v. Kloster Cruise Ltd.*, 939 F.2d 920, 922 (11th Cir. 1991) ("It is well-settled that the role of a district court in a proceeding to enforce an administrative subpoena is sharply limited . . . ."). Indeed, "inquiry is appropriate only into whether the evidence sought is material and relevant to a lawful purpose of the agency." *Fed. Trade Comm'n v. Lexium Int'l LLC*, No.

2:17-CV-30-FTM-29CM, 2017 WL 2664360, at *4 (M.D. Fla. June 1, 2017), report and recommendation adopted, 2017 WL 2655107 (M.D. Fla. June 20, 2017); *Kloster Cruise*, 939 F.2d at 922. Specifically, under Eleventh Circuit precedent, courts reviewing a CID are limited to inquiring "(1) whether the administrative investigation is within the agency's authority, (2) whether the agency's demand is too indefinite, and (3) whether the information sought is reasonably relevant." *U.S. E.E.O.C. v. Tire Kingdom, Inc.*, 80 F.3d 449, 450 (11th Cir. 1996). In addition, a court may quash a subpoena if "the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome." *United States v. ASG Sols. Corp.*, 2018 WL 1418023, at *4 (S.D. Cal. Mar. 22, 2018).

### A. The CID Is Within The U.S. Attorney's Authority

As noted above, the Attorney General (or his designees) have Congressional authority to issue CIDs if he "has reason to believe that any person may be in possession, custody, or control of any documentary material or information relevant to a false claims law investigation." 31 U.S.C. § 3733(a)(1)(A). Former Acting United States Attorney for the Middle District of Florida, W. Stephen Muldrow, executed the CID on September 27, 2017 under his authority as the Attorney General's designee. *See* 31 U.S.C. § 3733(a)(1); 28 C.F.R. Pt. 0, Subpt. Y, App.

Here the United States has reason to believe that Dr. Jonathan Daitch, may have committed violations of the FCA arising out of, among other things, payments Dr. Daitch received from Anesthesia Partners. This investigation into potential FCA violations falls squarely within the authority provided by Congress under § 3733. Tellingly, the Petition does challenge the CID on this point.

### B. The Demands Made By The CID Are Specific And Definite

Advanced Pain does not challenge CID 2017-30 for lacking specificity, and rightfully so. Courts in this district have held that administrative subpoenas contain the requisite specificity when they "adequately describe" the information being sought. *See E.E.O.C. v. KB Staffing, LLC*, 2014 WL 12628619, at *4 (M.D. Fla. Aug. 28, 2014).

Here, Dr. Vaughn has already complied with the document request and interrogatory portion of the subpoena. The only demand at issue is that he sit for a deposition on the advice he provided to Advanced Pain and its physicians relating to the anesthesia issue. Accordingly, any argument that the CID is too indefinite would fail.

### C. The Information Sought By The CID Is Relevant

"The measure of relevance used in subpoena enforcement actions is quite broad." *United States v. Fla. Azalea Specialists*, 19 F.3d 620, 624 (11th Cir. 1994). Indeed, the Eleventh Circuit has stated that a district court must enforce an administrative subpoena "if the information sought there is not plainly incompetent or irrelevant to any lawful purpose of the agency." *Kloster*, 939 F.2d 920, 922. Similarly, the Supreme Court has stated that district courts considering whether to enforce an administrative subpoena should be "cognizant" that the term relevant has been construed to mean "virtually any material that might cast light on the allegations against [a party]." *See McLane Co. v. E.E.O.C.*, 137 S. Ct. 1159, 1165 (2017) (internal quotation marks omitted).

These broad standards of relevance, which Advanced Pain has not even bothered to challenge, are met by the CID. Advanced Pain is relying on advice of counsel as a defense. The CID explicitly targets information necessary to evaluating the efficacy of that defense. As such, the information sought by the CID is relevant to the United States' investigation

and necessary to determine whether to file suit against Dr. Daitch for FCA violations related to Anesthesia Partners.

### D. The CID Seeks Non-Duplicative Information Not Protected By Privilege

Advanced Pain does not challenge the CID as overly burdensome. Instead, Advanced Pain argues that the CID is duplicative because the United States "has all the information, *in writing*, about which Mr. Vaughn would testify." Doc. 1 at 2. The basis for this argument rests largely on the White Paper and White Paper Supplement that counsel for Advanced Pain provided during the course of the United States' investigation. Advanced Pain appears to take the position that the White Papers were written by Mr. Vaughn and reflect the advice he purportedly gave to Dr. Daitch four years earlier. *See* Doc. 1 at 5 ("Mr. Vaughn opined in the white paper that Petitioners did not violate the AKS, which was the same opinion he verbally provided to the client and corroborated in email communications to the client that were subsequently provided to the government pursuant to the Vaughn CID."). Moreover, Advanced Pain deems Mr. Vaughn's deposition redundant given the production of 11 pages of emails—mostly from 2012—and his answer to a single interrogatory. Advanced Pain's ultimate position seems to be that a deposition of Mr. Vaughn is unnecessary because the advice that Mr. Vaughn allegedly provided to Advanced Pain and its physicians has already been disclosed.

Contrary to Advanced Pain's assertions, the "advice" provided by Mr. Vaughn has not been fully and clearly disclosed. The 11 page production raises more questions than it answers, and Mr. Vaughn's testimony is necessary to understanding the "advice" reflected in the emails he sent nearly six years ago. Perhaps recognizing the apparent lack of clarity in those emails, Advanced Pain has provided the United States with two white papers that

they claim contain the advice Mr. Vaughn provided in 2012. Even if that assertion is accurate, the evidentiary value of two unsigned pieces of legal analysis provided years after the fact and in coordination with Advanced Pain's new counsel is, at best, minimal. Further, these white papers, like the email productions, raise questions that Mr. Vaughn's deposition will help answer.

For example, Mr. Vaughn can provide testimony regarding the factual circumstances communicated to him by his clients. Such facts, of course, are necessary to any evaluation of an advice of counsel defense. *See United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012) (noting that an advice of counsel defense will fail if a party did not fully disclose all the facts to his counsel). Thus, the United States needs to question Mr. Vaughn about more than just the "advice" he allegedly provided. As such, Advanced Pain's arguments that the CID should be quashed because it is duplicative must be denied.

### E. The CID Is Not Mooted By Internal DOJ Policy Or Settlement With Dr. Frey

Relying on internal Department of Justice guidance, Advanced Pain argues that the CID is somehow moot based on Advanced Pain's belief that the United States intends to use noncompliance with the OIG opinions as the basis for proving that Advanced Pain violated the FCA. This is nothing more than a strawman constructed by counsel for Advanced Pain. The United States' investigation is not based on allegations that Dr. Daitch failed to comply with agency guidance. It is based on allegations that Dr. Daitch may have violated the Anti-Kickback Statute.

Similarly, Advanced Pain disingenuously suggests, based on a press release announcing a criminal and civil settlement entered into between the United States and Dr. Frey, that the United States has already resolved any allegations that Advanced Pain and

10

Dr. Daitch committed fraud. However, the settlement agreement was between the United States and Dr. Frey in his individual capacity. Advanced Pain and Dr. Daitch have not settled with the United States and thus have not been released from liability for any of the issues being investigated.

## IV. THE REQUEST TO MODIFY THE CID SHOULD BE DENIED

In the alternative, Advanced Pain asks the court to modify the CID by prohibiting the United States from asking Mr. Vaughn questions that Advanced Pain deems to be beyond the scope of their privilege waiver. As explained above, the conduct being investigated is within the scope of the Attorney General's congressional authority, the demands made are specific and clear, and the information sought is relevant to the United States' investigation. Thus, Advanced Pain's request should be denied unless they can show that the CID is overbroad or unduly burdensome. *See United States v. ASG Sols. Corp.*, 2018 WL 1418023, at *4 (S.D. Cal. Mar. 22, 2018).

At bottom, Advanced Pain is asking the Court to issue an order precluding the United States from asking Mr. Vaughn certain questions that Advanced Pain believes would invade its attorney-client privilege. Prophylactic measures of this kind are unnecessary, as Congress has explicitly stated that a deponent may "refuse to answer [a] question on the grounds of any . . . legal right or privilege." *See* 31 U.S.C. § 3733(h)(7)(A). As such, if counsel for Advanced Pain believes that any particular question asked of Mr. Vaughn implicates privilege, the appropriate (and efficient) action is to log an objection and instruct Mr. Vaughn not to answer. In an effort to avoid the delay and cost associated with litigating this issue, the United States proposed proceeding in this manner. *See* Ex. A, May 25, 2018 letter from K. Cohen to N. Waid. But, contrary to assertions that Advanced Pain

11

has made about the immense burden it is suffering as a result of the investigation being conducted by the United States, *see generally Advanced Pain Mgmt. & Spine Specialists v. United States*, No. 2:18-mc-8-FtM 99CM, Doc. 1, June, 20, 2018, counsel for Advanced Pain indicated that they would prefer to litigate.[4]

In any event, the issue Advanced Pain wants to litigate is beyond the scope of the Court's jurisdiction. *See Tire Kingdom, Inc.*, 80 F.3d at 450. Moreover, because Advanced Pain has failed to satisfy the standards necessary to modify an administrative subpoena, their Petition should be denied.

## V. CONCLUSION

As explained above, the conduct being investigated by the United States is within the scope of the Attorney General's congressional authority, the demands made are specific and clear, and the information sought is relevant to the United States' investigation. As such, the United States respectfully requests that the Petition be denied.

        Respectfully Submitted,

        MARIA CHAPA LOPEZ
        United States Attorney

By: */s/ David P. Sullivan*
     DAVID P. SULLIVAN
     Assistant United States Attorney
     Florida Bar No. 0111166
     2110 First Street, Suite 3-137
     Fort Myers, Florida 33901
     Telephone: (239) 461-2200
     Facsimile: (239) 461-2219
     Email: David.Sullivan3@usdoj.gov

---

[4] The United States disagrees with Advanced Pain regarding the scope of the privilege waiver. However, litigating that issue at this time would only waste resources and delay an ongoing investigation. The United States intends to litigate the scope of Advanced Pain's waiver at the appropriate time.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 1, 2018, I caused a true and correct copy of the foregoing to be filed with the Court using the Court's CM/ECF filing system, which will send an electronic notice of filing to:

Nicole Hughes Waid
Brian E. Dickerson
FISHER BROYLES LLP
2390 Tamiami Trial North, Suite 100
Naples, FL 34103

                                              */s/ David P. Sullivan*
                                              DAVID P. SULLIVAN
                                              Assistant United States Attorney