UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ADVANCED PAIN MANAGEMENT & SPINE SPECIALISTS,
PARK CENTER FOR PROCEDURES,
ANESTHESIA PARTNERS OF SOUTHWEST FLORIDA,

    Petitioners,

vs.                                    Case No. 2:18-mc-7-FtM-38CM

UNITED STATES OF AMERICA,

    Respondent.
_____/

**PETITIONERS ADVANCED PAIN MANAGEMENT & SPINE SPECIALISTS, PARK CENTER FOR PROCEDURES, AND ANESTHESIA PARTNERS OF SOUTHWEST FLORIDA'S RESPONSE TO THE UNITED STATES OF AMERICA'S MOTION TO DISMISS PETITION TO SET ASIDE OR MODIFY CIVIL INVESTIGATIVE DEMAND 2017-0030**
<u>**AND INCORPORATED MEMORANDUM OF LAW**</u>

      Petitioners, Advanced Pain Management & Spine Specialists ("Advanced Pain"), Park Center for Procedures ("Park Center"), and Anesthesia Partners of Southwest Florida ("Anesthesia Partners") (collectively, "Petitioners"), through undersigned counsel and pursuant to 31 U.S.C § 3733(j)(2), respectfully submit this Response to the United States of America's ("Respondent" or the "Government") Motion to Dismiss ("Motion") Petitioners' Petition to Set Aside or Modify Civil Investigative Demand 2017-0030 ("Petition") requesting the deposition testimony of Petitioners' compliance legal counsel David Vaughn ("Mr. Vaughn") and incorporated Memorandum of Law.

**I.      INTRODUCTION**

In its Motion, the Government argues that the Petition should be dismissed because: (1) the Court lacks jurisdiction over the Petition (Doc.#3 at 4-5); (2) Civil Investigative Demand 2017-0030 ("CID") is not mooted by internal Department of Justice policy or the settlement with Dr. Frey (*Id*. at 10-11); and (3) the demands made by the CID are specific and definite, the information sought by the CID is relevant, the CID seeks non-duplicative information not protected by privilege, and Petitioners have not objected to the CID as overbroad. *Id*. at 6-10. In the alternative, the Government argues that the CID should not be modified. *Id*. at 11-12. As set forth below, the Government is mistaken on all counts.

## II.   BACKGROUND

On September 30, 2017, the Government through the U.S. Attorney's Office for the Middle District of Florida (the "USAO") issued the CID seeking David Vaughn's deposition testimony subject to a limited waiver of the attorney-client privilege. ***Exhibit 1***.[1] On October 3, 2018, the undersigned sent the USAO a letter objecting to any interrogatory or document request that called for privileged information and otherwise, including, without limitation: (1) information protected by the attorney-client privilege; (2) any interrogatory or document request that called for the production of any information containing or reflecting the mental impressions, conclusions, opinions and/or legal theories of any attorney for the Petitioners on the grounds that such information is protected by the attorney work-product doctrine; and (3) any interrogatory or documentary request that is overly broad, unduly burdensome, harassing, or duplicative. ***Exhibit 2***. The October 3, 2018 letter contained specific objections to each request. The letter also stated,

---

[1] Out of an abundance of caution, we did not attach several exhibits to the Petition to Set Aside and/or Modify CID 2017-30 (Doc#1) because, unlike most civil cases, this matter is in the investigatory phase and we did not want to infringe upon the confidentiality of an ongoing government investigation. However, the Government has reviewed the attached Exhibits and agreed to the filing of the Exhibits within the instant Response to the Government's Motion to Dismiss.

"In the alternative, we request that the government limit the scope of the CID to information regarding the specific advice provided by David Vaughn to our clients about the legality of the anesthesia business model. If the government refuses to limit the scope of the CID, we will be forced to address this with the Court." *Id.*

The USAO responded to these objections in a letter dated October 6, 2017 which stated, "[a]s an initial matter, the United States agrees that the CID served on Mr. Vaughn is only seeking documents and information commensurate with the scope of your clients waiver of the attorney-client privilege ***on the issue of whether Dr. Daitch and Dr. Frey's ownership of Anesthesia Partners***, which performs all of the anesthesia services on the patients Advanced Pain refers for surgery, potential violates the federal Anti-kickback Statute ("AKS")." **Exhibit 3.** [emphasis added]. The Government's response is clear and unambiguous -- the scope of the waiver was limited to the physician's ownership of Anesthesia Partners as it related to a potential violation of the AKS. There is simply no other way to interpret this language. The Petitioners relied upon the Government's representations regarding the scope of the waiver in its October 6, 2017 letter and did not file a Petition to Set Aside the CID at that time because all parties were in agreement regarding the scope of the waiver and there was no factual or legal basis for any party to seek judicial review.

However, in contrast to its representations in its October 6, 2017 letter, the Government attempted to expand the scope of the waiver during the deposition testimony of Dr. Jonathan Daitch to advice provided regarding a separate business entity, IPS, a company that was not owned by Dr. Daitch or Dr. Frey and that provided anesthesia services to the ambulatory service center many years ago, prior to the creation of Anesthesia Partners. Dr. Daitches' deposition was the first time that undersigned counsel discussed IPS with the Government and, indeed, information regarding IPS was not part of a prior government subpoena request or CID investigation. In fact, undersigned

3

counsel did not represent the Advanced Pain-related entities during its contractual relationship with IPS and, as such, would not have considered the scope of the privilege waiver to extend to the contractual relationship with a company that existed prior to the initiation of undersigned's representation. Undersigned counsel objected to this line of questioning as protected by the attorney-client privilege and the witness was instructed not to answer this line of questions. This was the first time that the Government provided any indication that the scope of the waiver allegedly covered advice regarding a separate legal entity, IPS, contrary to its position in the October 6, 2017 letter upon which Petitioners justifiably relied.

The Government, undersigned counsel, and Mr. Vaughn then engaged in a series of email communications regarding the scope of the waiver. ***Exhibit 4.*** The Government sent Mr. Vaughn an email on October 27, 2018, cancelling the deposition until the Government could determine its next steps. Specifically, the email stated, "[u]ntil then, let's take the deposition off the schedule for now. So you can clear November 13th. We will likely have to reschedule for a later time once this is resolved." *Id.* Neither undersigned counsel nor Mr. Vaughn heard from the Government again about the deposition until May 2018, six (6) months later, when the Government sought to re-schedule Mr. Vaughn's deposition. (Doc#1 at 7).

On May 23, 2018, undersigned counsel sent an email requesting the Government to provide a "timely CID with a more defined purpose and scope so we can better understand the testimony you are seeking". ***Exhibit 5.*** The Government denied this request for a timely CID with a defined purpose and scope in a letter dated May 25, 2018. (Doc#3, Attachment A).

Now, in its Motion, the Government seeks to go even further beyond the expressly agreed upon limited waiver of the privilege and seeks privileged testimony from Mr. Vaughn on any advice he gave to Petitioners and its physicians relating to the "anesthesia issue." (Doc#3 at 8).

Anesthesia Partners hires and credentials Certified Registered Nurse Anesthetists ("CRNAs") to administer anesthesia to patients during out-patient procedures at the ambulatory surgical center. Anesthesia Partners bills for anesthesia services performed on behalf of its patients. The government seeks testimony regarding the "anesthesia issue," which is completely overbroad and could involve legal advice provided to Petitioners' regarding all aspects of their business. This intentional violation of the privilege is contrary to the Government's express agreement and the governing law and Rules and should not be permitted by the Court.

### III.   LEGAL STANDARD

31 U.S.C § 3733 is the federal statute relating to issuance and enforcement of civil investigative demands. The statute provides a mechanism for a person who has been served with a civil investigative demand to seek protection from the Court by requesting that the civil investigative demand be set aside or modified. 31 U.S.C § 3733(j)(2) states:

> **(2) Petition to modify or set aside demand.--(A)** Any person who has received a civil investigative demand issued under subsection (a) may file, in the district court of the United States for the judicial district within which such person resides, is found, or transacts business, and serve upon the false claims law investigator identified in such demand a petition for an order of the court to modify or set aside such demand. In the case of a petition addressed to an express demand for any product of discovery, a petition to modify or set aside such demand may be brought only in the district court of the United States for the judicial district in which the proceeding in which such discovery was obtained is or was last pending. Any petition under this subparagraph must be filed—
>
> **(i)** within 20 days after the date of service of the civil investigative demand, or at any time before the return date specified in the demand, whichever date is earlier, or
>
> **(ii)** within such longer period as may be prescribed in writing by any false claims law investigator identified in the demand.
>
> **(B)** The petition shall specify each ground upon which the petitioner relies in seeking relief under subparagraph (A), and may be based upon any failure of the demand to comply with the provisions of this section or upon any constitutional or other legal right or privilege of

5

> such person. During the pendency of the petition in the court, the court may stay, as it deems proper, the running of the time allowed for compliance with the demand, in whole or in part, except that the person filing the petition shall comply with any portions of the demand not sought to be modified or set aside.

As explained in the Petition, Petitioners seek to have the CID set aside on the basis that the Government's request to depose Mr. Vaughn is duplicative of information already provided both verbally and in writing, *at least three times*, including once in the initial white paper, once in the supplemental white paper, and once by providing copies to the AUSA of his emails where he stated his opinion to the client. (Doc#1 at 2, 5-6, 8-10). Alternatively, to the extent that the Court requires that Mr. Vaughn appear for deposition, the CID should be modified to the limited waiver of the attorney-client privilege as expressly agreed upon by the Government and no inquiry should be allowed into any issues extending the limited waiver.

## IV. ARGUMENT

### A. The Court Has Jurisdiction Over The Petition

In its Motion, the Government argues that the Court lacks jurisdiction over the Petition because Petitioners allegedly did not file the Petition within twenty (20) days of service pursuant to 31 U.S.C. § 3733(j)(2)(A)(i). (Doc.#3 at 4-5). However, the Government does not apprise the Court of its role in the Petitioners' decision not to file the Petition as soon as the Government now allegedly prefers. As set forth above, within days of Mr. Vaughn's receipt of the CID on October 3, 2018, Petitioners sent objections to the Government regarding the scope of the CID, as well as specific objections for requests that appeared to be overly broad, unduly burdensome, harassing, and/or duplicative. The Government responded that it agreed with the limitation of the scope of the waiver of the attorney-client privilege. Specifically, the Government wrote, "[a]s an initial matter, the United States agrees that the CID served on Mr. Vaughn is only seeking documents

and information commensurate with the scope of your clients' waiver of the attorney-client privilege ***on the issue of whether Dr. Daitch and Dr. Frey's ownership of Anesthesia Partners, which performs all of the anesthesia services on the patients Advanced Pain refers for surgery, potential violates the federal Anti-kickback Statute ("AKS")***." **Exhibit 3.** [emphasis added]. Petitioners relied upon the Government's clear and unambiguous agreement regarding the limited scope of the waiver and, thus, there was no Petition to file and no dispute to bring before the Court. Moreover, as set forth above, on October 27, 2018, the Government cancelled the deposition of Mr. Vaughn in writing. **Exhibit 4.** Since Mr. Vaughn had complied with the existing document request and interrogatory portion of the CID (Doc#3 at 8), there was no deposition scheduled, and in accordance with 3733(j)(2)(A)(ii) the Government had continued any deposition to a future date (if at all). As such, there could be no basis to file a Petition or seek the Court's intervention. Accordingly, the Government cannot seriously contend that the Petitioners should have filed a Petition to avoid a deposition that was not scheduled.

Moreover, given the Government's agreement regarding the limited waiver of Petitioners' privilege and its decision not to proceed with the deposition of Mr. Vaughn as scheduled, it would be fundamentally unfair for the Court to find that the Petition is untimely.

### B. The Testimony Sought By The CID Is Moot

In its Motion, the Government argues that "internal Department of Justice Guidance" and the Government's settlement with Dr. Frey do not moot the testimony sought by the CID. (Doc#3 at 10-11). The Government is again mistaken and the testimony sought is moot for two reasons.

First, on November 16, 2017, Attorney General Jeffrey Sessions issued a memorandum "Prohibition on Improper Guidance Documents" ("Guidance Policy") prohibiting DOJ components from issuing guidance documents that effectively bind the public without undergoing

the notice-and-comment rulemaking process. (Doc#1 at 2, 13-14, Exhibit A). Specifically, in affirmative civil enforcement cases, the Guidance Policy states, "[t]he Department may not use its enforcement authority to effectively convert agency documents into binding rules" and "Department litigators cannot use noncompliance with guidance documents as a basis for proving violations of applicable law." *Id*. If the Government is prohibited from using the Advisory Opinions to establish intent as mandated by the Attorney General, the purpose of the deposition testimony discussing legal advice pursuant to Advisory Opinions is irrelevant and the need for Mr. Vaughn's deposition testimony is moot.

Second, in a press release from the Department of Justice released on Monday, June 4, 2018, the Government stated, "[i]n addition, the civil settlement resolves kickback allegations associated with anesthesia services provided by Anesthesia Partners of SWFL, LLC that was owned by Dr. Frey and his partner Dr. Daitch." (Doc#3 at 14, Exhibit C). If the Government has settled the allegations regarding anesthesia services provided by Anesthesia Partners of SWFL, LLC, then there are no claims or damages for any alleged FCA violation rendering a deposition of Mr. Vaughn irrelevant and moot. If the allegations were only settled with Dr. Frey individually, it is unclear why the Government would name an uncharged person/entity in a criminal case and a non-involved person/entity in a civil case by name, both personally and through his corporate entity, in a public press release.

### C. The CID Should Be Set Aside

In its Motion, the Government goes into great length discussing the FCA, the authority of the Government to issue a CID, and the ability of a party to file a petition in order to set aside or modify a CID, none of which is disputed by Petitioners. (Doc#3 at 6-7). After providing this analysis, the Government alleges that the CID should not be set aside because the demands made

by the CID are specific and definite, the information sought by the CID is relevant, the CID seeks non-duplicative information not protected by privilege, and Petitioners have not objected to the CID as overbroad. *Id*. at 8-10.  These allegations are not correct.

### 1. **The Demands Made By The CID Are Not Specific And Definite**

As set forth above and in the Petition, the Government expressly agreed in its October 6, 2017 letter, that the CID and any testimony given by Mr. Vaughn would be limited to "documents and information commensurate with the scope of your clients waiver of the attorney-client privilege ***on the issue of whether Dr. Daitch and Dr. Frey's ownership of Anesthesia Partners***, which performs all of the anesthesia services on the patients Advanced Pain refers for surgery, potential violates the federal Anti-kickback Statute ("AKS")." **Exhibit 3.** In its Motion, the Government now seeks privileged testimony from Petitioners' counsel, Mr. Vaughn, regarding "the advice he provided to Advanced Pain and its physicians relating to the anesthesia issue," which is clearly beyond the limited waiver expressly agreed upon by the Government. (Doc#3 at 8). As the Government is well aware, the Petitioners are engaged in providing anesthesia. By seeking testimony from Petitioners' counsel Mr. Vaughn regarding the "anesthesia issue," in essence the Government is requesting privileged testimony from counsel regarding Petitioners' entire business. That being the case, the Government cannot seriously contend that the demands made by the CID are specific and definite enough to comply with the governing law. The Government's contention that Petitioners did "not challenge CID 2017-30 for lacking specificity" (Doc#3 at 8) also lacks merit. Petitioners specifically objected to the subpoena on October 3, 2017 and thereafter. (Doc#1 at 7).

### 2. **The Demands Made By The CID Are Not Relevant**

Without providing a single example of what and how the testimony it seeks from Mr. Vaughn could be relevant, in its Motion the Government summarily concludes that any testimony it seeks must be relevant. (Doc#3 at 8-9). The Government also wrongly suggests that Petitioners have not objected to the CID on the grounds of relevance. *Id*. at 8. The Government is wrong on both points.

First, because the Government seeks testimony that is beyond the scope of the expressly agreed upon limited waiver of the privilege including testimony related to the all-consuming yet undefined "anesthesia issue," the Government is necessarily seeking testimony that is not relevant. Second, as set forth above, if the Government is prohibited from using Advisory Opinions to establish intent as mandated by the Attorney General, the purpose of the deposition testimony discussing legal advice pursuant to the Advisory Opinions is necessarily seeking information that is not relevant, nor likely to lead to the discovery of admissible evidence. Finally, contrary to what is argued in the Motion, Petitioners have objected to the CID on relevance grounds. ***Exhibit 2.*** Thus, this argument is without merit.

### 3. The Demands Made By The CID Are Duplicative And Seek Privileged Information

In its Motion, the Government contends that the CID seeks non-duplicative information that is not protected by the privilege. (Doc#3 at 9-10). That is not the case.

First, in its Motion, the Government concedes that Mr. Vaughn "has already complied with the document request and interrogatory portion of the subpoena". *Id* at 8. As such, the Government's contention that Mr. Vaughn's production of documents "raises more questions than it answers" (*Id.* at 9) is belied by its own Motion. In truth, the Government already has what is relevant from Mr. Vaughn to investigate and prosecute any legitimate case.

Second, as set forth above and in the Petition, Mr. Vaughn has informed the Government on numerous occasions, in teleconferences, white papers, and by documentary evidence provided to the Government that he does not believe the Petitioners' business model violates the AKS and that it can be differentiated from OIG Advisory Opinion 12-06 which, according to the Attorney General, has no force of law in any event. (Doc#1 at 5-10, Exhibits B & C); (Doc#3 at 9-1). At all material times, Mr. Vaughn maintained and continues to maintain that this legal advice and the analysis provided to the Government with undersigned counsel is accurate. (Doc#1 at 5-7, 11-12). Moreover, Mr. Vaughn has informed the Government that this was the advice given to Petitioners when Petitioners contemplated the creation of Anesthesia Partners for the provision of anesthesia services at the ambulatory service center and that he would testify to this at trial. A person confronted with violating a statute can attempt to negate proof of specific intent by establishing the defense of good faith reliance on advice of counsel. *United States v. Eisenstein,* 731 42d 1286 (11th Cir. 1984); *United States v. Bush*, 599 F.2d 72, 76-78 (5th Cir.1979). In order to take advantage of this defense, the defendant must show that he relied in good faith after first making a full disclosure of all facts that are relevant to the advice for which he consulted the attorney. *Id.*; *See also United States v. Taglione*, 546 F.2d 194, 200-01 (5th Cir.1977). When the defendant presents evidence that he disclosed all relevant facts to his attorney and relied on the attorney's advice based on the disclosure, the trial court must instruct the jury on the defense of good faith reliance on counsel. *Id.*

The defense of the attorney-client privilege precludes a finding under the FCA that the provider acted with the requisite knowledge to submit a false claim. According to the caselaw, the sole issue is whether the attorney provided advice to the client and the client reasonably relied on that advice. In the instant case, both Petitioners and legal counsel agree that all of the relevant

facts were provided to legal counsel, that legal counsel provided the proper advice, and that Petitioners relied upon this advice. AUSA Cohen has already taken the deposition of Dr. Daitch, who owns the Practice, and testified that he relied upon David Vaughn's legal advice when forming Anesthesia Partners. (Doc#1 at 12-13). Mr. Vaughn has informed the Government on multiple occasions that he provided the proper legal advice to Petitioners when they created Anesthesia Partners and that he would provide that same advice today. There is no area of dispute about the good faith reliance on the advice of a legal expert; the dispute is that the Government does not agree with Mr. Vaughn's legal analysis that Petitioner's anesthesia business model violates the AKS. Thus, there is no material, probative value in taking the deposition of Mr. Vaughn.

In addition, Mr. Vaughn is a non-party witness who is counsel for the Petitioners and he has not been accused of any wrongdoing. It is well-settled that a deposition of an adversary's counsel is strongly disfavored. *See, e.g., Axiom Worldwide, Inc. v. HTRD Group Hong Kong Ltd.*, 2013 U.S. Dist. LEXIS 8475, at *15-16 (M.D. Fla. January 22, 2013) (deposition of opposing counsel limited to counsel's "non-privileged, personal knowledge" and was limited to written questions that the judge would review and approve beforehand). Mr. Vaughn is a licensed attorney in good standing and should be extended at least some level of professional courtesy inasmuch as his deposition clearly is unnecessary as his knowledge and legal opinions as to the subject matter to which the limited waiver of the attorney-client privilege applies has been fully and exhaustively disclosed to the Government. The CID is unnecessary in light of the multiple disclosures Mr. Vaughn already has provided to the Government in the form of verbal communications, the lengthy white paper and a supplemental white paper, his emails to the client regarding his opinion on the issue which is the subject matter of the investigation, and the Government's concession that Mr.

Vaughn "has already complied with the document request and interrogatory portion of the subpoena." (Doc#3 at 8).[2]

A CID is meant to be a preliminary fact-finding tool for the government. However, it is not meant to " . . . be so broad so as to be in the nature of a 'fishing expedition.'" *See Peters v. United States*, 853 F.2d 692, 699 (9th Cir. 1988). Since the Government already has in its possession the facts about which Mr. Vaughn would testify, there is no legitimate basis to take Mr. Vaughn's deposition, other than to attempt to extract facts about which the attorney-client privilege has not been waived which is impermissible.

### 4. Petitioners Have Objected To The Overbreadth Of The CID

In its Motion, the Government contends that Petitioners have not objected to the overbreadth of the CID. (Doc#3 at 9, 11). That simply is not true. As set forth above and in the Petition, on October 3, 2018, the undersigned sent the USAO a letter objecting to any interrogatory or document request that called for privileged information, including, without limitation: (1) information protected by the attorney-client privilege; (2) any interrogatory or document request that called for the production of any information containing or reflecting the mental impressions, conclusions, opinions and/or legal theories of any attorney for the Petitioners on the grounds that

---

[2] Because the CID seeks information outside the scope of the limited waiver, the Government has failed to follow the guidelines set forth in the United States Attorneys' Manual, Section 9-13.410. This Section provides guidelines for issuing subpoenas to attorneys for information relating to the representation of the attorney's client. Section 9-13.410(A) requires prior authorization for issuance of the subpoena by the Assistant Attorney General or a Deputy Assistant Attorney General of the Criminal Division *even in civil cases* (subject to certain exceptions). According to the Guidelines, among others, the following principles apply when issuing a subpoena to a lawyer regarding the lawyer's representation of a client: the "information sought shall not be protected by a valid claim of privilege", "[a]ll reasonable steps to obtain the information from alternative sources shall have proved to be unsuccessful", and the "subpoena shall be narrowly drawn and directed at material information regarding a limited subject matter and shall cover a reasonable, limited period of time". Section 9-13.410(C)(1, 2 & 6). As set forth above and herein, given that the deposition of Mr. Vaughn is strongly disfavored and that the Government has not followed its own Guidelines in that the CID seeks privileged information that has not been waived, all reasonable steps to obtain the information from alternative sources have not been exhausted, and the CID is not directed at a limited subject matter (but instead to the amorphous "Anesthesia Issue"), the CID should be set aside.

such information is protected by the attorney work-product doctrine; and (3) any interrogatory or documentary request that is overly broad, unduly burdensome, harassing, or duplicative. The letter contained specific objections for each request. ***Exhibit 2.*** The Government responded to these objections in a letter dated October 6, 2017. ***Exhibit 3.*** Since this letter, undersigned counsel has repeatedly objected to the Government's attempts to seek discovery to which it is not entitled, including testimony beyond the scope of the limited waiver of the privilege that was expressly agreed upon by the Government. Thus, the Government's contention that Petitioners have not objected to the overbreadth of the CID is belied by the record.

### D. If The Court Does Not Set Aside The CID, Then The CID Should Be Modified

If the Court does not set aside the CID in its entirety, then the Court should modify the CID and limit the subject matter of Mr. Vaughn's deposition to the limited attorney-client privilege waiver pertaining to the specific issue of the Anesthesia Partners' business model as expressly agreed to by the Government in multiple communications and no inquiry should be allowed into any legal advice provided regarding separate business relationships, such as the prior contractual relationship with ISP. All other topics remain subject to the attorney-client privilege. A "civil investigative demand…may not require… the giving of any oral testimony if such…testimony would be protected from disclosure under" "(B) the standards applicable to discovery request under the Federal Rules of Civil Procedure…". 31 USC § 3733(b). Federal Rule of Civil Procedure 45(d)(3)(A)(iii) states "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." The Government has provided no such exception. Moreover, the Government's contention that the deposition of Mr. Vaughn should go forward, that undersigned counsel should simply instruct Mr. Vaughn not to answer, and that the

Government will litigate the scope of the waiver at the appropriate time is meritless. (Doc#3 at 11-12 & n. 4). If the privilege issue is not resolved, it could subject Mr. Vaughn to additional deposition testimony and waste additional financial resources of the Petitioner. If the Court orders that the deposition of Mr. Vaughn go forward, then we respectfully request that the Court order a protective order requiring that the Government abide by the limited waiver of the privilege it agreed to and no inquiry should be allowed into legal advice provided regarding any other contractual relationships.

V. **CONCLUSION**

The Government abandoned the CID and, as such, Petitioners respectfully request that the Court set aside the CID. Moreover, the inquiry that is the subject matter of the CID and intended deposition of Mr. Vaughn are irrelevant pursuant to the Government's Guidance Policy, therefore rendering the deposition moot. Petitioners also request that the CID be set aside because it is duplicative, overbroad, and designed for no purpose other than to extract privileged information that has not been waived. Alternatively, to the extent that the Court requires that Mr. Vaughn appear for deposition, we respectfully request that the CID be modified and/or the Court enter a protective order to limit any testimony of Mr. Vaughn to the limited waiver of the attorney-client privilege agreed upon by the Government and no inquiry should be allowed pertaining to any legal advice provided regarding separate business relationships, such as the prior contractual relationship with ISP.

Respectfully submitted,

**FISHER BROYLES LLP**

*Attorneys for Respondent, Advanced Pain Management and Spine Specialists*
2390 Tamiami Trail North, Suite 100
Naples, FL 34103
Telephone: (202) 570-0248
Facsimile:  (239) 236-1260

By: /s/ Brian E. Dickerson
**BRIAN E. DICKERSON**
Fla. Bar No. 106615
brian.dickerson@fisherbroyles.com


By: /s/ Nicole Hughes Waid
**NICOLE HUGHES WAID**
Fla. Bar No. 121720
nicole.waid@fisherbroyles.com


**CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that a true and correct copy of the foregoing document was served via CM/ECF on this 15th day of August, 2018 on **Maria Chapa Lopez**, United States Attorney, and **Kyle S. Cohen, Esq.**, Assistant United States Attorney, 2110 First Street, Suite 3-137, Fort Myers, Florida 33901.

                                  By:    /s/ Nicole Hughes Waid
                                               Nicole Hughes Waid, Esq.