UNITED STATES ATTORNEY'S OFFICE FOR
THE MIDDLE DISTRICT OF FLORIDA

CIVIL INVESTIGATIVE DEMAND

                        Civil Investigative
                        Demand No.: 2016-091
                        Volume I

JONATHAN DAITCH, M.D.
13320 Ponderosa Way
Fort Myers, Florida 33907

| | |
|---|---|
| VIDEOTAPED DEPOSITION OF: | JONATHAN S. DAITCH, M.D. |
| DATE TAKEN: | October 19, 2017 |
| TIME: | 1:17 p.m. to 9:03 p.m. |
| PLACE TAKEN: | Office of the U.S. Attorney<br>2110 First Street, Suite 3-137<br>Fort Myers, Florida 33901 |
| TAKEN BY: | Counsel for the Government |
| REPORTER: | Jackie D. Burrell, RPR, FPR<br>Notary Public, State of Florida<br>at Large |

FORT MYERS COURT REPORTING, LLC
*Registered Professional Reporters*
2180 West First Street, Suite 120
Fort Myers, Florida 33901
Phone: (239) 334-1411  FAX: (239) 334-1476

APPEARANCES:

On Behalf of the Government:

    UNITED STATES ATTORNEY'S OFFICE
    2110 First Street, Suite 3-137
    Fort Myers, Florida  33901
    kyle.cohen@usdoj.gov

    By:  Kyle S. Cohen, Assistant U.S. Attorney


On Behalf of Dr. Daitch:

    FISHERBROYLES, LLP
    127 Montrose Drive
    Fort Myers, Florida  33919
    nicole.waid@fisherbroyles.com

    By:  Nicole H. Waid, Esquire


Also present:  Mary Scott, Videographer
               Kevin Codol, Investigator
               Heather Hamed, Investigator
               Isaac Bledsoe, Investigator

- - - - -

I N D E X                    P A G E

Examination by Mr. Cohen                5

## Page 83

```
03:37:59  1   Gardose, who's the registered agent?
03:38:01  2        A.   Yes.
03:38:01  3        Q.   Who is that?
03:38:03  4        A.   She was working in our finance office at the
03:38:07  5   time.
03:38:07  6        Q.   And on the second page, this is signed by
03:38:12  7   Nancy Huether?
03:38:16  8        A.   Huether.
03:38:17  9        Q.   Huether.  Who is that?
03:38:17 10        A.   She was our COO at the time.
03:38:24 11        Q.   Is she still with you?
03:38:26 12        A.   No.
03:38:27 13        Q.   When did she leave?
03:38:31 14        A.   Probably not long after this.
03:38:33 15        Q.   What was the circumstances of her departure?
03:38:35 16        A.   I can't remember.
03:38:37 17        Q.   And this document appears to be -- have filed
03:38:41 18   with the Secretary of the State of Florida on September
03:38:45 19   12, 2013?
03:38:45 20        A.   Yes.
03:38:46 21        Q.   Prior to filing this September 12, 2013, how
03:38:52 22   long had you been contemplating opening up a practice
03:38:56 23   like Anesthesia Partners?
03:39:01 24        A.   We had an arrangement with a group called IPS
03:39:14 25   Fort Myers or IPS, where it was a joint venture, and
```

## Page 84

```
03:39:23  1   with -- and our contact there was Dr. Carl Noback.  And
03:39:32  2   Dr. Noback approached us and offered to do our
03:39:36  3   anesthesia for the center, and we looked at -- on the
03:39:46  4   advice of -- of his attorney we looked at the
03:39:51  5   information.  It seemed like it was a workable idea, and
03:39:56  6   we decided to enter in a joint venture.  And I think
03:40:02  7   that was around 2010, 2011.
03:40:06  8             Now your question was had I contemplated th
03:40:09  9   before --
03:40:09 10        Q.   I'm trying to find out at what point you
03:40:11 11   contemplated opening up Anesthesia Partners.  We kno
03:40:14 12   that it was filed with the Secretary of State --
         13        A.   Right.
03:40:16 14        Q.   -- in September of 2013.
03:40:18 15        A.   Okay.  And everything was going fine with our
03:40:25 16   relationship.  And then I became aware of the OIG
03:40:28 17   opinion that discussed joint venture groups providing
03:40:34 18   anesthesia that was thought to be a kickback
03:40:36 19   arrangement.
03:40:42 20        Q.   Okay.
03:40:43 21        A.   And I presented that information to several
03:40:48 22   attorneys, and I felt uncomfortable with it.  And I
03:41:00 23   asked -- I got a couple of opinions, and after reading
03:41:02 24   it I just -- it just didn't taste right, didn't smell
03:41:06 25   right, and it seemed like something I should get out of
```

## Page 85

```
03:41:09  1   because it was a joint venture.  And I knew that OIG was
03:41:13  2   very critical of joint ventures.
03:41:15  3        Q.   You said you had talked about this with
03:41:17  4   several attorneys?
03:41:18  5        A.   Yes.
03:41:18  6        Q.   What attorneys did you talk about this with?
03:41:21  7        A.   Well, I had a conversation with David Vaughn.
03:41:27  8        Q.   Other than David Vaughn?
03:41:28  9        A.   And I think there was an attorney named John
03:41:32 10   Morse.  I'm not -- I'm not sure of the name, but we --
03:41:35 11   our -- our -- I mean, I discussed this with Dr. Frey,
03:41:38 12   too.  And we were concerned that we were in a potential
03:41:43 13   kickback situation, and we felt that this was -- could
03:41:47 14   be viewed in a similar vein as the two OIG opinions that
03:41:53 15   had come down.
03:41:54 16        Q.   So you identified David Vaughn and John Morse
03:41:57 17   as attorneys that you talked to about this issue?
03:41:59 18        A.   Yes.
03:41:59 19        Q.   Were there any other attorneys that you talked
03:42:02 20   to about this issue?
03:42:03 21        A.   Not that I can recall.
03:42:04 22        Q.   Do you have any documentation relating to
03:42:08 23   discussions that you had with John Morse regarding this
03:42:13 24   issue?
03:42:14 25        A.   I don't know.
```

## Page 86

```
03:42:18  1        Q.   Do you know where John Morse is located?
03:42:30  2        A.   And I'm not even sure that's his name, so I'll
03:42:34  3   have to provide that name for you.
03:42:35  4        Q.   Do you know where he's located?
03:42:36  5        A.   I think he was out of Tampa.
03:42:38  6        Q.   Do you know what firm he was with?
03:42:40  7        A.   No.
03:42:44  8             MS. WAID:  Just for the record, is it Morse,
03:42:47  9   M-O-R-S-E, or Morris?
03:42:47 10             THE WITNESS:  Oh, M-O-R-S-E, I think, yeah.
03:42:53 11   BY MR. COHEN:
03:42:55 12        Q.   When approximately would you have had
03:42:57 13   discussions with Tom Morse?
03:42:59 14        A.   Shortly after the -- or might have been John
03:43:04 15   Morse.  After the OIG opinion came out.  David Vaughn
03:43:09 16   emailed us that opinion and told us to beware.
03:43:21 17        Q.   Had you worked with John Morse before?
03:43:23 18        A.   No.  I don't know how I got his name.
03:43:26 19        Q.   Have you worked with him since?
03:43:29 20        A.   No.
03:43:29 21        Q.   Do you recall conversations that you had with
03:43:38 22   John Morse about this issue?
03:43:40 23        A.   Vaguely.
03:43:44 24        Q.   Tell me what you remember.
03:43:45 25             MS. WAID:  No, objection, attorney/client
```

## Page 87

1 privilege.
2 　　　　MR. COHEN: You've waived the attorney/client
3 privilege as it relates to Anesthesia Partners and the
4 OIG opinion, so this is clearly within the bounds of
5 this.
6 　　　　MS. WAID: This is actually not. This
7 actually goes towards the Noback -- the Noback
8 situation. That is not Anesthesia Partners of Southwest
9 Florida. Anesthesia Partners of Southwest Florida was
10 actually created subsequent. This goes to the IPS
11 contractual issues. This has nothing to do with the
12 formation of Advanced Partners of Southwest Florida.
13 　　　　MR. COHEN: The attorney/client privilege was
14 waived not only with respect to the Anesthesia Partners
15 issue but with regards to the discussions and
16 communications related to the OIG opinions on this
17 issue, and it was clear from the correspondence on that.
18 　　　　MS. WAID: It was distinctly for Advanced Pain
19 of Southwest Florida, and it was -- those were my
20 objections that were written to you even when you gave
21 out the David Vaughn CD -- CID. It is clear that it is
22 towards the -- towards the creation of the Anesthesia
23 Partners of Southwest Florida. IPS has nothing to do
24 with your CID, has nothing to do with your subpoenas, so
25 I'm going to object, and I'm not going to allow him to

## Page 88

1 answer those questions until we've had a chance to
2 review whatever it is. And if I feel then I will waive
3 towards that, I will waive towards that, but that is not
4 what was waived. IPS has nothing to do with either your
5 CID or your subpoena, and I'm going to stand firm on
6 that one.
7 　　　　MR. COHEN: I'm going to mark -- can you mark
8 this area of the transcript, please. What time is it?
9 　　　　THE VIDEOGRAPHER: 3:45.
10 　　　　MS. WAID: Now, if you want to ask him based
11 upon the advice of these attorneys why he did something
12 that's a different story, but the communications
13 themselves were not waived. It was waived specifically
14 towards the creation of Anesthesia Partners of Southwest
15 Florida.
16 　　　　MR. COHEN: All right. We'll go back through
17 the correspondence that we had.
18 　　　　MS. WAID: That's fine.
19 　　　　MR. COHEN: And I guess I have no choice but
20 to agree to disagree with you at this stage, but --
21 　　　　MS. WAID: We agree to disagree a lot, so
22 that's fine as well.
23 　　　　MR. COHEN: And we'll have to come back. But
24 it may mean we need to come back here today or to
25 another CID deposition. Would you agree to come back

## Page 89

1 a second deposition should -- on that issue should you
2 come to the conclusion that that was part of the waiver?
3 　　　　MS. WAID: I'd need to speak to my client
4 about it.
5 BY MR. COHEN:
6 　　Q.　How many times -- and, again, I'm not asking
7 for the substance.
8 　　　　MS. WAID: No, I know.
9 BY MR. COHEN:
10 　　Q.　How many times --
11 　　　　MS. WAID: I'm not upset.
12 BY MR. COHEN:
13 　　Q.　-- would you have had communications with
14 Attorney Morse about this issue?
15 　　A.　I would have to look back in my notes.
16 　　Q.　Was it more than once?
17 　　A.　I can't recall.
18 　　Q.　Do you have notes of discussions that you had
19 with Attorney Morse on this issue?
20 　　A.　No, I don't. I came across his name in, I
21 believe it was an email, so I am -- but I have to go
22 back and look.
23 　　Q.　Do you have any documentation whatsoever
24 regarding communications that you had with Morse on this
25 issue?

## Page 90

1 　　A.　I have to check my records.
2 　　　　MR. COHEN: Ms. Waid, if you could please
3 preserve, to the extent they exist, any documentation
4 relating to communications that either Dr. Daitch or Dr.
5 Frey had with respect to this attorney.
6 　　　　MS. WAID: Yes, and we'll preserve them for
7 David Vaughn as well, because he spoke to David Vaughn
8 as well about this.
9 　　　　MR. COHEN: Thank you.
10 　　　　MS. WAID: You're welcome.
11 BY MR. COHEN:
12 　　Q.　Okay. Back to the original question. At what
13 point in time did you contemplate opening Anesthesia
14 Partners?
15 　　A.　When we realized that there was an issue with
16 -- when we felt there was an issue with the arrangement
17 with IPS of Fort Myers.
18 　　Q.　And what did you feel the issue or the
19 arrangement was?
20 　　A.　I felt it was a joint venture, and I think
21 just -- it was in print it was a joint venture, and each
22 of these things were joint ventures on the opinions, and
23 that -- I wanted to stay as far away from a joint
24 venture as I could.
25 　　Q.　So it's your understanding the fact that it

259

| | |
|---|---|
| 09:01:49 | second to confer? And I think we're done. |
| 09:01:52 | THE WITNESS: Sure. |
| 09:01:52 | MR. COHEN: Off the record. |
| 09:01:53 | THE VIDEOGRAPHER: We're going off the record. |
| 09:01:54 | The time is 9:02 a.m. -- p.m. |
| 09:02:00 | (Recess held from 9:02 p.m. to 9:02 p.m.) |
| 09:02:52 | THE VIDEOGRAPHER: We're back on the record. |
| 09:03:02 | The time is 9:03 p.m. |
| 09:03:04 | MR. COHEN: Thank you so much for your time. |
| 09:03:07 | I have no further questions today. |
| 09:03:10 | THE WITNESS: Thank you. Thank you, everyone. |
| 09:03:13 | THE VIDEOGRAPHER: This concludes the civil |
| 09:03:14 | investigative demand of Dr. Jonathan Daitch. The time |
| 09:03:17 | is 9:03 p.m. |
| 09:03:22 | (Deposition concluded at 9:03 p.m.) |

260

CERTIFICATE OF OATH

STATE OF FLORIDA
COUNTY OF LEE

I, the undersigned authority, certify that JONATHAN S. DAITCH, M.D., personally appeared before me and was duly sworn on October 19, 2017.

WITNESS my hand and official seal on October 26, 2017.

(This transcript has been digitally signed.)

Jackie D. Burrell
Jackie D. Burrell, RPR, FPR
Notary Public - State of Florida
My Commission Expires 2/17/2021
Commission Number GG 071173

261

REPORTER'S CERTIFICATE WITH ACKNOWLEDGMENT

STATE OF FLORIDA
COUNTY OF LEE

I, Jackie D. Burrell, RPR, FPR and Notary Public in and for the State of Florida at Large, do hereby certify that I was authorized to and did stenographically report the civil investigative demand of JONATHAN S. DAITCH, M.D.; and that the transcript is a true record of the testimony given by the witness.

I further certify that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorney or counsel connected with this action, nor am I financially interested in the action.

Dated on October 26, 2017.

(This transcript has been digitally signed.)

Jackie D. Burrell
JACKIE D. BURRELL, RPR, FPR