**Subject:** Re: Anesthesia contract
**Date:** Wednesday, October 3, 2012 at 11:20:21 AM Central Daylight Time
**From:** David Vaughn
**To:** biz@apmss.net
**Attachments:** image001.jpg

Well, you asked about Stark and whether it is applicable. Stark and the anti-kickback statute are applicable in situations where the same owners have different entities but they are the beneficial owners of both. The fact that these statutes are "applicable" does not imply they are violated, only that an analysis has to be done to determine whether those statutes are violated.

Haven't we already analyzed this before, right after the OIG opinion came out on the Company Model. I'm pretty sure I sent you, or at least Jonathan, an analysis on the Company Model already, stating that I did not think the OIG's opinion applied to this scenario.

Check your prior emails. I'm in an airport right now, so I don't have access to everything.

David

David M. Vaughn, Esq., CPC
8480 Bluebonnet Blvd., Suite B
Baton Rouge, LA 70810
Phone: 225.769.1320
Fax: 225.769.1115

---

**From:** "biz@apmss.net" <biz@apmss.net>
**Reply-To:** "biz@apmss.net" <biz@apmss.net>
**Date:** Wednesday, October 3, 2012 11:12 AM
**To:** David Vaughn <david@lalawfirm.net>
**Subject:** RE: Anesthesia contract

I apologize but I don't quite understand your response.

The Surgical Spine Associates, LLC is owned by Dr. Daitch & Dr. Frey. The surgery center (PCP) is also owned by Dr. Daitch & Dr. Frey.
How do we legally bill for anesthesia?

Can the Surgical Spine Associates, LLC hire the CRNA and bill the anesthesia under the Surgical Spine Associates LLC's tax ID?

Thank you,

Leslie Dubé
Business Operations Manager
P: 239.437.8000
F: 239-337-6889
biz@apmss.net



Advanced
Pain Management &
Spine Specialists

~ Park Center for Procedures ~

PRIVACY/CONFIDENTIALITY NOTICE REGARDING PROTECTED HEALTH INFORMATION

**Subject:** Re: Anesthesia contract
**Date:** Wednesday, October 3, 2012 at 10:17:50 AM Central Daylight Time
**From:** David Vaughn
**To:**
**Attachments:** image001.jpg

No, not true. Same beneficial owners so Stark looks past corporate structure.

David M. Vaughn
225.769.1320
Sent via iPhone 4S

On Oct 3, 2012, at 9:04 AM, "Biz" <biz@apmss.net> wrote:

> David:
>
> As long as we use the separate LLC for the anesthesia billing there is no health care related issues (Stark, etc)?
>
> Thank you,
>
> Leslie Dubé
> Business Operations Manager
> P: 239.437.8000
> F: 239-337-6889
> biz@apmss.net
> <image001.jpg>
>
> PRIVACY/CONFIDENTIALITY NOTICE REGARDING PROTECTED HEALTH INFORMATION
>
> This email (and accompanying documents) contains protected health information that is privileged, confidential and/or otherwise exempt from and protected from disclosure under applicable laws, including the Health Insurance Portability and Accountability Act. The information contained in this email (and any accompanying documents) is intended only for the personal and confidential use of the intended recipient. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this information in error and that any review, dissemination, distribution, copying or action taken in reliance on the contents of this communication is strictly prohibited. If you have received this communication in error, please destroy it immediately.
>
>
>> On Sep 28, 2012, at 6:26 PM, "jdaitchmd"
>> <jdaitchmd@gmail.com> wrote:

See David Vaughn's response:
We have an LLC already: Surgical Specialists I believe.
Lourdes knows the name of it...
Jonathan S. Daitch, MD
P: 239.437.8000
F: 239.437.8012
<image001.jpg><image002.jpg>
CONFIDENTIALITY STATEMENT
The information contained in this transmission may be privileged. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution, or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. To reply, please send an e-mail to: jdaitch@embarqmail.com

**From:** David Vaughn [mailto:david@lalawfirm.net]
**Sent:** Friday, September 28, 2012 10:20 AM
**To:** Gmail
**Subject:** Re: Anesthesia contract

Jonathan,
If you mean the CRNA independent contract, Holly already emailed this to you earlier this week.
As to the network question, not sure what you mean by "center" and whether the "center" is the ASC. I think you mean if the ASC is in network is the anesthesia billing in network. No. The ASC doesn't bill the anesthesia; there is no facility fee for anesthesia. Anesthesia is billed in the name of the Tax ID that employs or contracts with the CRNA. I would not reassign benefits from the CRNA to the ASC because it may be denied as bundled. You need a separate LLC for the anesthesia; then credential that LLC with Medicare and your other payers.
Also, you need to know that other practices have been put on prepayment review in FL for billing anesthesia to Medicare for garden variety injections. FL Medicare has a LCD for anesthesia for pain that you need to review. This is a target area.
David
David M. Vaughn, Esq., CPC
8480 Bluebonnet Blvd., Suite B
Baton Rouge, LA 70810
Phone: 225.769.1320
Fax: 225.769.1115

**From:** Jonathan Daitch <jdaitchmd@gmail.com>
**Date:** Thursday, September 27, 2012 7:48 PM
**To:** David Vaughn <david@lalawfirm.net>, Leslie Dube <ldube@apmss.net>
**Subject:** Anesthesia contract

Please send me your sample contract.
Also if the ASC is in network, is any anesthesia billing by the center automatically in network also?
Thanks.
From Jonathan Daitch
Sent from my iPhone

# Dr Daitch

**From:** Dr Daitch
**Sent:** Monday, June 04, 2012 4:50 PM
**To:** Leslie Dube; Dr Frey; Bobbie Daitch
**Subject:** RE: Article from Vaughn & Associates, L.L.C. - OIG Strikes Down "Company Model"

I have a call in to David Vaughn regarding this.

---

**From:** Leslie Dube
**Sent:** Monday, June 04, 2012 12:35 PM
**To:** Dr Frey; Dr Daitch; Bobbie Daitch
**Subject:** FW: Article from Vaughn & Associates, L.L.C. - OIG Strikes Down "Company Model"

See email below from David Vaughn.

Thank you,

Leslie Dubé
Business Operations Manager
P: 239.437.8000
F: 239-337-6889
biz@apmss.net



PRIVACY/CONFIDENTIALITY NOTICE REGARDING PROTECTED HEALTH INFORMATION

This email (and accompanying documents) contains protected health information that is privileged, confidential and/or otherwise exempt from and protected from disclosure under applicable laws, including the Health Insurance Portability and Accountability Act. The information contained in this email (and any accompanying documents) is intended only for the personal and confidential use of the intended recipient. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this information in error and that any review, dissemination, distribution, copying or action taken in reliance on the contents of this communication is strictly prohibited. If you have received this communication in error, please destroy it immediately.

---

**From:** Holly Young [mailto:holly@lalawfirm.net]
**Sent:** Monday, June 04, 2012 11:46 AM
**To:** SEMINAR ATTENDEES
**Cc:** Holly Young
**Subject:** Article from Vaughn & Associates, L.L.C. - OIG Strikes Down "Company Model"

**From:** David Vaughn <david@lalawfirm.net>
**Sent:** Friday, June 08, 2012 8:34 AM
**To:** Gmail
**Subject:** Re: Anesthesia employee

It is safer to employ them. There is a safe harbor for bona fide employees. I do think your scenario is different from the GI case in which the OIG handed down its opinion, but the OIG stressed that one of the problems was that the GI docs were making profits from the anesthesia providers in instances where the GI docs were sole source of the referrals and were essentially set up a new line of business, i.e., anesthesia. Technically, all those factors are present in your case too, so while it is more cumbersome and costly to employ them, it is also safer.

David

David M. Vaughn, JD, CPC
Vaughn & Associates, LLC
8480 Bluebonnet Blvd., Suite B
Baton Rouge, LA 70810
Phone: 225.769.1320
Fax: 225.769.1115



VAUGHN & ASSOCIATES, L.L.C.

David M. Vaughn            8480 Bluebonnet Blvd., Ste. B
225.769.1313               Baton Rouge, LA 70810
Attorney at Law            Phone: 225.769.1320
Certified Professional Coder   Fax: 225.769.1115
Email: david@lalawfirm.net    Website: www.lalawfirm.net

---

**From:** "jdaitchmd@gmail.com" <jdaitchmd@gmail.com>
**Date:** Thursday, June 7, 2012 6:42 PM
**To:** David Vaughn <david@lalawfirm.net>
**Subject:** Anesthesia employee

Does it make a difference if we use anesthetists as independent contractors (best for us, we pay hourly rate, ASC would bill) or employing them directly (we bill, pay malpractice, benefits)?

From Jonathan Daitch
Sent from my iPhone

**From:** David Vaughn <david@lalawfirm.net>
**Sent:** Friday, June 08, 2012 1:47 PM
**To:** jdaitchmd@gmail.com
**Subject:** Re: Anesthesia employee

Yes, you can do that.

David

David M. Vaughn, JD, CPC
Vaughn & Associates, LLC
8480 Bluebonnet Blvd., Suite B
Baton Rouge, LA 70810
Phone: 225.769.1320
Fax: 225.769.1115





David M. Vaughn
225.769.1313
Attorney at Law
Certified Professional Coder
Email: david@lalawfirm.net

5480 Bluebonnet Blvd., Ste. B
Baton Rouge, LA 70810
Phone: 225.769.1320
Fax: 225.769.1115
Website: www.lalawfirm.net

---

**From:** Jonathan Daitch <jdaitchmd@gmail.com>
**Reply-To:** Jonathan Daitch <jdaitchmd@gmail.com>
**Date:** Friday, June 8, 2012 11:56 AM
**To:** David Vaughn <david@lalawfirm.net>
**Subject:** RE: Anesthesia employee

Is there any reason why we can't employ them on an hourly rate, and they provide their own insurances?

Jonathan S. Daitch, MD
P: 239.437.8000
F: 239.437.8012



Advanced Pain Management & Spine Specialists
Resolving The Pain,
Restoring The Person

CONFIDENTIALITY STATEMENT
The information contained in this transmission may be privileged. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution, or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. To reply, please send an e-mail to: jdaitch@embarqmail.com



# OIG Strikes Down "Company Model"

On June 1, 2012, the OIG issued an opinion stating that ASC's cannot contract with its anesthesia groups to keep part of the anesthesia revenues. The so-called "Company Model" was determined to be in violation of the anti-kickback statute ("AKS"). Additionally, a separate model, the "Management Model" was also determined to violate the AKS even though the ASC was only going to charge management fees for non-government patients. My analysis is below. But let me state this at the outset. For those clients that are paying ASC's part of their anesthesia revenues, get out of those contracts immediately. Your contracts should provide a clause stating that the contracts can be renegotiated or rescinded if the terms violate federal or state laws. For those clients who have been robbed of contracts because they refused to pay GI ASC's part of their anesthesia revenue, you should send this analysis, together with the attached OIG Advisory Opinion 12-06 to the ASC whose contract you did not secure and advise them they are in violation of the AKS and should reconsider their choice of providers. Insofar as my analysis is concerned, the facts of this case involved a Medicare certified ASC who proposed to charge its anesthesia providers in one of two ways. First, the ASC proposed to charge the anesthesia group management fees for pre-operative nursing assessments, space that the providers used at the ASC, and assistance with transferring billing to the anesthesia group's billing office. The fees would be charged on a per patient basis, but only for non-government patients. Alternatively, the ASC's second model was the Company Model, whereby the ASC's physician owners would create a new anesthesia entity, would own that entity, and would contract with the anesthesia group to supply the anesthesia. The ASC's owners (GI docs) would keep all collections and pay the anesthesia group a negotiated fee designed to generate profits for the ASC owners. The OIG struck both of these proposed arrangements. As to the Management Services model, the OIG stated that it did not matter that there was a proposed carve out of federal patients from the management fee charges. The OIG stated the AKS was still violated because the only reason the anesthesia group obtained the exclusive contract was because it was willing to pay the management fees, and the exclusive contract included the referral of federal patients, even though management fees were not going to be charged for those federal patients. In other words, the securing of anesthesia business, if it includes anesthesia services to federal patients, violates the AKS even if the referral fees only relate to non-federal patients. Since federal patients were obtained as part of the arrangement, the AKS is violated. The OIG stated, "in short, . . . the additional remuneration paid by the [anesthesia group] in the form of the Management Services fees could unduly influence the [ASC] to select the [anesthesia group] as the [ASC's] exclusive provider of anesthesia services." As to the Company Model, the OIG stated that it has long viewed "that the opportunity for a referring physician to earn a profit, including through an investment in an entity for which he or she generates business, could constitute an illegal inducement." The OIG acknowledged that there are safe harbors for employees and personal services contracts under the AKS, but stated that neither of these would protect the profits to be distributed to the ASC's owners because "one purpose of the remuneration is to generate or reward referrals for anesthesia services." In the proposed Company Model, the ASC's owners proposed to create a new anesthesia company to be the exclusive provider of anesthesia services at the ASC. The ASC GI docs would own the new company. The new anesthesia company would contract with the existing anesthesia group to be the exclusive provider of anesthesia services. The new anesthesia company would bill for all anesthesia services, and pay the anesthesia group a negotiated fee designed to allow the GI docs, as owners of the new anesthesia company, a healthy profit. As to this arrangement, the OIG stated, "it appears that the Proposed Arrangement B is designed to permit the [ASC] to do indirectly what they cannot do directly; that is, to receive compensation, in the form of a portion of the [anesthesia group's] anesthesia services revenues, in return for their referrals . . . ." Although the

OIG acknowledged that falling outside of the safe harbor is "not fatal" to violating the AKS, the OIG stated that the Company Model poses more than a minimal risk of fraud and abuse, and as such, the OIG viewed it as violating the AKS. The OIG reminded providers that it had issued a Special Advisory Bulletin in 2003, in which it warned of referring physicians setting up new entities to generate new profits from new lines of business to which the referring physicians can generate referrals. The OIG pointed out that the Company Model was just that, i.e., a new company, the profits of which would be generated solely by the referrals of the new company's owners. In conclusion, the anesthesia and GI industry is now on notice. Both the Company Model and a management services model which generates anesthesia profits for the referring GI physicians implicates the AKS. I have attached a copy of the OIG's opinion. If for some reason the opinion does not appear, email me and I will send it to you. Thanks to client Joe Laden for bringing this opinion to my attention.

**Date:**    June 4, 2012
**Source:**  DMV

---

**Vaughn & Associates LLC**
9191 Siegen Lane, Bldg. #8
Baton Rouge, LA 70810
**Tel:** 225.769.1320
**Fax:** 225.769.1115
www.lalawfirm.net

Subject: Re: Medical directorship
Date: Sunday, July 27, 2014 at 11:15:59 AM Central Daylight Time
From: David Vaughn
To: Michael Frey, Dr. Daitch
Attachments: D327113B-DBB7-4C1B-A7CE-C5B7A589CE45[223].png

There are 2 sides to this coin. Does it make clinical sense to have an anesthesiologist to manage the CRNAs? Sure. Is that required by the OIG in its kickback opinion? No. Will there be extra time spent by the medical director managing the CRNAs? Probably, but I can't quantify the amount of time. Should that extra time be compensated? That is up to the both of you. As I stated in my prior email, different practices handle this differently, with some practices paying, and other practices not paying. The payment of medical director administrative duties are typically approved by the government based on time sheets being turned in with the date, service rendered, and the amount of time for each service spelled out, at a rate of approximately $150/hr.

David

David Vaughn, Esq., CPC
Vaughn & Associates, LLC
8480 Bluebonnet Blvd., Ste. B
Baton Rouge, LA 70810
Phone: 225.769.1320
Fax: 225.769.1115

 VAUGHN & ASSOCIATES, L.L.C.

| David M. Vaughn | 8480 Bluebonnet Blvd., Ste. B |
| 225.769.1313 | Baton Rouge, LA 70810 |
| Attorney at Law | Phone: 225.769.1320 |
| Certified Professional Coder | Fax: 225.769.1115 |
| Email: david@lalawfirm.net | Website: www.lalawfirm.net |

From: Michael Frey <mfrey@apmss.net>
Date: Friday, July 25, 2014 at 6:42 PM
To: "Jonathan Daitch, M.D." <jdaitch@apmss.net>
Cc: David Vaughn <david@lalawfirm.net>
Subject: Re: Medical directorship

Just to remind you that HR, anesthesia hiring, and scheduling, and other daily activities are already included in the fees from the anesthesia company.

Sent from my iPhone

On Jul 25, 2014, at 6:39 PM, "Dr. Daitch" <jdaitch@apmss.net> wrote:

Since IPS is suing us, I want to make sure that we have all bases covered. I want to make sure we are doing a different model than we were doing before, for OIG reasons.

As you know, we are hiring CRNAs directly, but we have an anesthesia billing and staffing company. We actually found the CRNA staff which we are using.

Also, we need to be clear, the CRNAs are not technically hired by the surgery center. They are paid by Anesthesia Partners of SW FL. We started this company because we were told if we used our ASC to bill, the anesthesia bill might not be paid because it could be considered bundled.

In order to fulfill the criteria of hiring CRNAs via the surgery center subsidiary, it seems to me that we should have on-site management to show we are doing material services with regard to anesthesia.

So therefore it seems logical that I should be the anesthesia administrator to deal with any issues which arise, such as quality of care, CRNA evaluations, and any hr items.

Do you agree?

---

**From:** David Vaughn [mailto:david@lalawfirm.net]
**Sent:** Friday, July 25, 2014 1:12 PM
**To:** Michael Frey
**Cc:** Jonathan Daitch
**Subject:** Re: Medical director

I'm not following you. Which lawsuit and what does the medical director have to do with the lawsuit?

David

**David Vaughn, Esq., CPC**
**Vaughn & Associates, LLC**
**8480 Bluebonnet Blvd., Ste. B**
**Baton Rouge, LA 70810**
**Phone: 225.769.1320**
**Fax: 225.769.1115**

<image001.png>

---

**From:** Michael Frey <mfrey@apmss.net>
**Date:** Friday, July 25, 2014 at 12:02 PM
**To:** David Vaughn <david@lalawfirm.net>
**Cc:** "Jonathan Daitch, M.D." <jdaitch@apmss.net>
**Subject:** Re: Medical director

I apologize I also should ask as pertains to the law suit do we have to have a medical director. I should've cc'd Dr Daitch on the first email.

Sent from my iPhone

On Jul 25, 2014, at 9:09 AM, David Vaughn <david@lalawfirm.net> wrote:

There isn't a customary way this is handled. In many closely held companies, there is no fee. In some hospitals, there is no fee. It just depends on the dynamics and politics of the case at hand. If the parties agree to pay a fee, it is generally predicated on the number of hours being spent performing administrative duties. The medical director turns in a time sheet identifying the date, the service performed, and how much time was spent, and then is paid based on the hours reflected on the time sheet. In general, the feds have approved $150/hr for administrative work for medical director fees.

David

**David Vaughn, Esq., CPC**
**Vaughn & Associates, LLC**
**8480 Bluebonnet Blvd., Ste. B**
**Baton Rouge, LA 70810**
**Phone: 225.769.1320**
**Fax: 225.769.1115**

<D327113B-DBB7-4C1B-A7CE-C5B7A589CE45[184].png>

From: Michael Frey <mfrey@apmss.net>
Date: Friday, July 25, 2014 at 4:49 AM
To: David Vaughn <david@lalawfirm.net>
Subject: Medical director

What is reasonable and customary to pay medical director of anesthesia at our ASC